## NEVADA CO. v. FARNSWORTH.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1900.)

### No. 1,333.

1. EVIDENCE—HEARSAY.

A letter between third parties, reciting statements said by the writer to have been made to him by defendant, is not admissible against defendant to prove such statements. unless it is shown that he authorized or knew of the writing of the letter.

2. TRIAL—INSTRUCTIONS—CONFORMITY TO PLEADINGS.

Where a complaint by a corporation for money had and received was based expressly on the ground that the money was furnished by plaintiff to defendant, as its agent, with which to buy certain property, and that defendant purchased the property for much less than the amount represented, it was not error for the court to refuse to charge that plaintiff could recover if it appeared that defendant had been a promoter of the corporation, and afterwards purchased the property, and made a secret profit on it, such issue not having been presented by the pleadings.

In Error to the Circuit Court of the United States for the District of Utah.

See 89 Fed. 164.

This is an action for money had and received, which was brought by the Nevada Company, the plaintiff in error, against Philo T. Farnsworth, the defendant in error. The complaint stated two independent causes of action of the same class in separate counts. Upon the first cause of action a verdict was returned against the Nevada Company, while upon the second cause of action a verdict was returned in its favor. The present writ of error, which was sued out by the plaintiff, challenges the judgment against the plaintiff which was rendered on the first count of the complaint. In that count the plaintiff averred, in substance, that between July 15, 1897, and August 24, 1897, the plaintiff company constituted Philo T. Farnsworth, the defendant, its agent to buy certain real and personal property in the state of Nevada, which may be described generally as the Frank Bradley group of mining claims, the W. S. Gage group of mining claims, and the Mitchell & Miller property,—the latter consisting of 160 acres of land, certain water rights, a 10-stamp mill, assay office, and other buildings; that on July 15, 1897, August 24, 1897, and August 27, 1897, it sent to the defendant altogether the sum of $60,000 to make the purchase of the properties aforesaid; that the defendant afterwards represented that he had invested the money so sent to him in the purchase of the Bradley mines for the sum of $26,750, and in the purchase of the Gage mining claims for the sum of $27,250, and in the purchase of the Mitchell & Miller property at the price of $4,750; that in point of fact said defendant paid for the Bradley mines only $9,000, for the Gage mining claims only $4,250, for the Mitchell & Miller property only $4,250, making an aggregate expenditure of $17,500 for the purchase of said properties; and that by reason of the facts aforesaid the defendant. on August 27, 1897, became indebted to the plaintiff in the sum of $42,500, for which it demanded judgment.

Charles C. Dey (J. A. Street and Cephas Brainerd, on the brief), for plaintiff in error.

John M. Zane (Joseph L. Rawlins and Barlow Ferguson, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The chief question which this record presents for our determination is whether the trial court erred in refusing to direct a verdict for the Nevada Company on the first count of its complaint for the sum of $41,250, with interest thereon from August 27, 1897. The principal contention urged upon the argument—and it is also the main proposition which is advanced in the brief—is that an instruction to this effect, which was requested at the conclusion of the evidence. We shall accordingly direct our attention in the first instance to this proposition. Concerning some of the facts that are alleged in the complaint there was no controversy at the conclusion of the trial. It was proven beyond peradventure, and so the jury were instructed, that Farnsworth, the defendant, did receive from the plaintiff the sum of $60,000 at the time stated in the complaint; that this sum was paid to the defendant on account of the purchase of the three properties mentioned above, to wit, the Bradley mines, the Gage mining claims, and the Mitchell & Miller property; and that when the money was so paid to the defendant the plaintiff company supposed that the defendant had contracted in its name to pay for said properties the sum of $60,000 in the aggregate, whereas the price actually paid therefor by the defendant was only $17,500, as was alleged in the complaint. There was a controversy, however, before the jury as to the capacity in which the sum of $60,000 was received by the defendant. The plaintiff claimed, as alleged in its complaint, that it paid the money to the defendant as its agent, believing that he had bought the several properties in its name, or for its account. On the other hand, the defendant testified in his own favor to the following effect: That in the latter part of June, 1897, prior to the organization of the Nevada Company, he took Anson P. Stokes, who was one of the promoters of the plaintiff company, to visit and inspect the three properties aforesaid, telling him at the time that he (Farnsworth) controlled all of the properties; that, after inspecting the same, Stokes inquired for what price in the aggregate the several properties could be bought, and was told by the defendant that he would make the price therefor $60,000; and that, after some further inquiries, and a further examination of the properties, Stokes agreed with him definitely to take the properties at the price last mentioned. The defendant also testified that at the time of these negotiations between himself and Stokes he had secured options upon the properties which enabled him to control and sell them as his own; that this was what he meant when he told Stokes that he controlled the properties; and that shortly after the aforesaid agreement was entered into, to wit, on July 15, 1897, he received a check from Stokes in the sum of $5,000 to apply on the purchase

price. The subsequent payments of $25,000 on August 24, 1897, and of $30,000 on August 27, 1897, which made up the sum of $60,000 that was received by the defendant, appear to have been made with checks which were drawn by the plaintiff company, and were made payable to the defendant's order, and were by him collected. In view of the defendant's testimony to the effect above stated, it must be conceded that there was some evidence before the jury which tended to establish the defendant's claim that he did not receive the sum of money in controversy as agent of the plaintiff company, to be expended on its account in the purchase of the properties, but that he received it in his own right, in payment for properties which he had sold to Stokes, one of the promoters of the company, before it was organized. It is true that the defendant admitted in the course of his examination that shortly after, or perhaps contemporaneously with, his alleged agreement to sell the properties, he was advised by Stokes that a company would be organized forthwith to take over the properties, and that he agreed, at Stokes' solicitation, to become the general manager of such company when it was formed, and also to take stock therein; and that, in accordance with such agreement, he did become the general manager, and a shareholder of the plaintiff company, when it was organized. It is also undisputed that the defendant not only failed to advise Stokes or the plaintiff company how much he had paid for the several properties in question, but that he studiously withheld such information from them; and it is also true that the record contains an abundance of evidence which tends to show that the plaintiff company supposed that the defendant was acting as its agent when it paid him the sum of $55,000 to be expended in its behalf. But these were facts and circumstances which only served to discredit the defendant's claim that he sold the properties to Stokes individually for $60,000, and that the money paid to him was received in his own right as vendor; and it was the province of the jury to decide how far such facts and circumstances did discredit the defendant's contention, and how far they served to disprove his statement that he sold the properties to Stokes as property which was at the time subject to his disposition and control.

The trial court submitted the issues of fact arising upon the testimony aforesaid under instructions that neither party has seen fit to challenge in this court. It charged the jury, in substance, that, to entitle the plaintiff to a verdict on the first count, it must show that the defendant acted in its behalf, and as its agent, in purchasing the several properties, but that they should regard the fact of such agency as sufficiently established in either of the following events: First, if the defendant purported to act for the plaintiff in purchasing the several properties, but did so without its authority, and the plaintiff subsequently ratified the transaction; second, if the plaintiff paid the defendant the sum of money in controversy in the belief that he was acting for it, and the defendant's conduct previously thereto had been such as to reasonably induce the plaintiff company to entertain that belief; or, third, if the defendant knew, when he received the money from the plaintiff, that it supposed him to be acting for it, and as its agent, although the

defendant had done nothing previously to induce such a belief in the mind of a reasonable person. On the issues thus presented the finding was in favor of the defendant. The learned judge of the trial court did not set the verdict aside, although he was requested to do so, from which action on his part we must infer that, after listening to the evidence as it was adduced, he did not regard the action of the jury as so far opposed to the weight of proof as to warrant the conclusion that its action was superinduced by passion or prejudice. This court, as a matter of course, has no power to annul the verdict merely because it does not seem to be supported by the weight of testimony. It is our function to determine as a matter of law whether there was any substantial evidence to sustain the defendant's contention upon the first count, and, for the reasons heretofore indicated, we are constrained to hold that there was.

In behalf of the plaintiff it is claimed that a material error was committed in excluding a letter which was written by J. G. Stokes to his father, Anson P. Stokes, at Salt Lake City, under date of August 23, 1897. This letter detailed certain statements relative to the purchase of the three properties in controversy which were said to have been made by the defendant to J. G. Stokes at Salt Lake City nearly two months after the alleged sale of the properties by the defendant to Anson P. Stokes for the sum of $60,000. It was not shown that the defendant either authorized the letter in question to be written, or that he saw the same, and was acquainted with its contents, before it was mailed. The letter appears to have been a private communication from the son to the father, in which the former, of his own volition, merely repeated certain representations, which, as he claimed, had been made to him by the defendant on the return of J. G. Stokes from New York, whither he had gone with his father to assist in the organization of the Nevada Company after arrangements had been consummated for the acquisition of the properties in controversy. In view of the circumstances under which the letter was written, it seems to have been hearsay testimony, so far as the defendant was concerned, and inadmissible against him for that reason, as the trial court properly decided.

It is finally claimed on behalf of the plaintiff company, although very little space is devoted to the discussion of the point in the brief, that the trial court erred in refusing to give the following instructions, which were requested by the plaintiff:

"Promoters of a corporation are persons who negotiate for and take part in procuring the formation and organization of a corporation. Anson Phelps Stokes and J. G. Phelps Stokes are shown by the evidence to have been promoters of the Nevada Company, and if you find from the evidence in this case that the defendant, Farnsworth, co-operated in any way with Anson Phelps Stokes in getting up the corporation to purchase and work mines and mining claims in Nevada, and consented to take stock in such company, and to be its general manager, and furnished any information to be used for the purpose of inducing others to take stock and become interested in such proposed corporation, and upon the organization of the company he became a stockholder and the general manager, then Farnsworth would also be considered one of the promoters of the plaintiff corporation. If you find Farnsworth was a promoter

of the corporation, then he could not purchase the Bradley, Gage, and Mitchell & Miller properties after becoming a promoter, and sell them to the corporation at an advance, without being liable to refund to the corporation any secret profits he made; and the plaintiff can treat him as an agent, and recover in this suit the whole amount of the difference between the price he paid and the price he received, with interest."

There are two reasons, in our opinion, why the refusal to give these instructions cannot be regarded as a material error entitling the plaintiff to a new trial. In the first place, the complaint on which the case was tried was not framed with a view of recovering the money sued for upon the ground that the defendant was a promoter of the Nevada Company, and that, being such, his conduct had operated as a fraud upon persons who subsequently became stockholders of that company. The charge contained in the first count of the complaint is very specific, and to the effect that the plaintiff company constituted the defendant its agent to buy the properties in controversy, and that it sent a certain sum of money to him as its agent to consummate the purchase, which money he received for the purpose of disbursing as the plaintiff's agent. If the plaintiff company intended to ask a recovery on the additional ground that the defendant, by his prior dealings with Stokes, became one of its promoters, and for that reason was not entitled, under any circumstances, to charge the company, when it became organized, more for the properties in controversy than they had cost him, then the complaint should have foreshadowed that ground of recovery by some appropriate allegations, so as to distinctly tender the issue whether the defendant was a promoter. That issue cannot be said to have been raised by the pleadings, and for that reason the trial court would have erred if it had permitted the issue to be raised for the first time by the instructions. In the second place, when the verdict of the jury is construed in the light of the pleadings and the evidence, it is apparent that they found and determined that the defendant, having secured an option on the properties in controversy which enabled him to control the same, had in fact sold the properties to Stokes individually for $60,000, and had done so before he consented to take part in the organization of the Nevada Company, or to become a shareholder therein, or the general manager thereof. In view of this finding by the jury, it would seem that the defendant could not be charged with liability as a promoter. It is also questionable whether an action at law to recover secret profits realized by a promoter can be maintained in the federal circuit court, where the distinction between proceedings at law and equity is still maintained and carefully observed. This latter point was discussed to some extent on the argument by counsel for the defendant, but we find it unnecessary to decide the point, and would not be understood on the present occasion as expressing any opinion thereon. The judgment below is affirmed.