PACKER v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 8, 1901.)

No. 39.

1. POST OFFICE—USING MAILS TO DEFRAUD—PROSECUTIONS.
    In a prosecution of a defendant under Rev. St. § 5480, on an indictment charging him with having devised a scheme to defraud, to be effected by the use of the post-office establishment of the United States, where the government introduced evidence, in support of the specific charges made, showing that defendant under an assumed name deposited in a post office circulars addressed to the persons named in the indictment, who were strangers to him, soliciting remittances to be used by him in stock speculations on account of such persons, which circulars contained on their face persuasive evidence of a scheme to defraud, and that defendant received through the post office remittances of money from such persons, which he subsequently reported to them as having been lost in such speculations, such evidence was sufficient to warrant the submission of the case to the jury.

2. SAME—FRAUDULENT INTENT—EVIDENCE OF OTHER TRANSACTIONS.
    In such a prosecution, the question of fraudulent intent being the principal issue, other similar business transactions, conducted by defendant a year prior to those charged in the indictment, are not so remote in time that the court may not, in its discretion, permit them to be proved. Such evidence does not tend to prove that defendant had devised a scheme to defraud by the use of the mails, but that he was then engaged in a scheme similar in other particulars to that charged, the fraudulent character of which is in issue.

3. CRIMINAL LAW—EVIDENCE—LETTERS WRITTEN TO DEFENDANT.
    A letter, written to a defendant charged with having devised a scheme to defraud, to be effected by the use of the mails, by a person claimed to have been defrauded by means of such scheme, after the transaction on which the charge was based had been closed, which contained a narrative of the past transaction and charges of fraud against defendant, but which was not answered or acted on by him, was not admissible in evidence against him, either as part of the res gestæ or as implying an admission on his part of the truth of the statements made therein; and its admission over his objection was prejudicial error.

In Error to the Circuit Court of the United States for the Southern District of New York.

Frederick B. House, for plaintiff in error.
Ernest E. Baldwin, for the United States.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error was convicted upon three counts of an indictment charging him with the offenses defined by section 5480, Rev. St. U. S. The indictment contained

seven counts, and on the trial the government elected to proceed upon the first, second, and seventh. The counts charged him, in substance, with having devised a scheme to defraud, to be effected by the use of the post-office establishment of the United States, which consisted in inducing other persons to intrust him with money for investment in stock speculations, pursuant to which he deposited in the post office a certain circular signed by the fictitious name "James S. Robinson," depicting his success as an operator in such speculations, and promising the return of the moneys intrusted to him, together with large profits. The first count alleged that, pursuant to the scheme to defraud, he deposited one of these circulars in the post office at the city of New York January 28, 1899, addressed to one Moody at Portland, Me. The second count charged him with receiving, pursuant to the scheme to defraud, from the post office at New York City, on the 3d day of February, 1899, a letter containing a check from Moody for $300. The seventh count charged him with receiving, pursuant to the scheme to defraud, from the post office at New York City, on the 1st day of March, 1899, a letter from one Kriebel inclosing $50 in currency.

Upon the trial the government produced several witnesses, each of whom testified that he had received through the mail one of the circulars; that subsequently he made a remittance to Robinson, addressed to him at No. 32 Broadway, New York City; and that subsequently he received a letter from Robinson informing him that the investment had proved disastrous, and the amount remitted had been lost. The government also proved that registered letters addressed to James S. Robinson were receipted for by the plaintiff in error; that mail matter generally so addressed was delivered to him at the office No. 32 Broadway, New York City; and that the business at such office was conducted by him under the name of Robinson. The government also proved that one of the circulars signed by Robinson was addressed to Moody, and was mailed at New York City on or about January 28, 1899; that on or about February 3, 1899, Moody sent through the mail, addressed to Robinson at No. 32 Broadway, New York City, the letter and remittance described in the second count of the indictment; and that Kriebel received through the mail one of the circulars signed by Robinson, and thereafter, and shortly before the 1st day of March, 1899, sent through the mail, addressed to Robinson at No. 32 Broadway, New York City, a letter inclosing the remittance described in the seventh count of the indictment.

The correspondence which ensued between Robinson and the persons who sent remittances to him was introduced in evidence. In this correspondence Robinson acknowledged receipt of the remittances, referred vaguely to the speculations in which he was using them, in the earlier stages held out assurances of large profits, and finally explained how disaster had befallen the speculations. In the correspondence with Moody, Robinson's last letter was written March 18, 1899, and announced the total loss of the funds intrusted to him for use in speculation. After the introduction of this letter the government introduced a letter in reply from Moody to Robin-

son, written March 20, 1899. This letter rehearsed in part the substance of the previous correspondence, referred to a "Burlington deal," out of which Robinson should have made a large profit for Moody, and set forth generally a narrative and inferences tending to show that Robinson was a fraud, and had been deceiving Moody from the start. Witnesses were also examined by the government who gave testimony about dealings with the accused in December, 1897, and January and February, 1898, tending to show that he was then doing business under the name of the Hughes Investment Company, and called himself Hughes; that the business he was then conducting was similar in its nature and methods to that which he solicited in the circulars, and subsequently carried on.

Exceptions were taken upon the trial to the ruling of the trial judge refusing to direct a verdict of acquittal, as requested by the accused at the close of the evidence; to his ruling in receiving the testimony in regard to the transactions of the accused in December, 1897, and January and February, 1898, against the objections to its competency; and to the ruling admitting the Moody letter of March 20, 1899, against the objection to its competency. The assignments of error which have been argued at the bar are founded upon these exceptions.

To justify a conviction under the statute it was incumbent upon the government to prove that the accused had devised a scheme to defraud; that he intended to effect the scheme by opening correspondence with some other person or persons through the post-office establishment of the United States; and that in carrying out such scheme he either placed in or received from some post office of the United States a letter or packet. The statute permits the indictment to severally charge offenses to the number of three when committed within the same six calendar months. Each letter thus placed in or received from the post office pursuant to the scheme constitutes a separate and distinct offense. Ex parte Henry, 123 U. S. 372, 8 Sup. Ct. 142, 31 L. Ed. 174.

We entertain no doubt that the trial judge correctly refused to direct a verdict of acquittal. The circular carried upon its face such persuasive evidence of a scheme to defraud that it is somewhat remarkable that any person of ordinary intelligence should have been deluded by it to believe that it offered an honest proposition for an investment or speculation. It was extensively distributed by mail to residents of distant localites, who had never had any dealings with the accused, and to whom he was a stranger. We think that this circular, and the subsequent correspondence, were enough to authorize a finding by the jury that the scheme contemplated obtaining the money of unwary persons, ostensibly for use by the accused in stock speculations to be conducted at his discretion, and of keeping it and converting it to his own use by postponing a settlement with his employers, and finally representing that it had been lost in some untoward turn of the stock market. The proof was clear that he intended to effect this scheme by opening correspondence through the post office, and that in carrying it out the circulars

and the letters were placed in and received from the post office, as specifically charged in the indictment. If the circulars, the correspondence, and the transactions of the accused, as exhibited by the testimony of the witnesses, were capable of an interpretation consistent with his innocence, the question was one for the jury, and not for the court.

The most serious criticism made upon the ruling admitting the evidence in regard to the previous business transactions of the accused is because of the remoteness of the time at which these transactions took place. Evidence of offenses not connected with the one for which the accused is on trial is generally inadmissible. Ordinarily, it does not tend to prove him guilty of the particular offense, and is exceedingly prejudicial in affecting his character with the jury. It is competent only when the quo animo is in issue. Because the intent is in issue whenever in criminal or in civil actions a fraudulent scheme or act is the subject of proof, evidence is competent of other frauds of like character committed by the party charged at or near the same time. In such cases the evidence is competent only when the other frauds or criminal acts are so connected as to time, and are so similar in other relations, that the same motive may reasonably be imputed to them all. Lincoln v. Claflin, 7 Wall. 138, 19 L. Ed. 106; Insurance Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997; Mayer v. People, 80 N. Y. 364. It is obviously impossible to lay down a definite rule limiting the time within which such transactions must have taken place in order to make proof of them competent. Although it is generally said in the adjudications that they must have occurred about the same time as the commission of the particular fraud or offense in issue, such a statement is quite indefinite; and in some of the reported cases proof of them has been received although they occurred months before, and in others although they occurred afterwards. In the application of this rule each case must depend largely upon its own facts, and not infrequently the limit of time must rest practically in the discretion of the trial judge. We are not prepared to say that the transactions which were permitted to be proved in the present case were so remote in point of time as to be inadmissible, notwithstanding they took place about a year before those for which the accused was indicted. The evidence did not tend to show that the accused had devised a scheme to defraud to be effected by the use of the mails, but it did tend to show that he was then engaged in a scheme, similar in other particulars to that charged in the indictment, the fraudulent character of which was in issue.

The introduction in evidence of the Moody letter was prejudicial to the accused, and we can discover no ground on which the ruling receiving it can be upheld. It was written and sent after the offenses charged in the indictment had been committed. The correspondence between Moody and the accused while the transactions evidencing the scheme to defraud were taking place was competent, because the letters were verbal acts constituting a part of the res gestæ. It was also competent because the letters from the accused

were admissions of facts contained in them, and a response to the letters of Moody, and the latter were necessary to a correct understanding of the scope and effect of the admissions. It is urged that the last Moody letter was competent because it was a reply to a letter from the accused soliciting further remittances from Moody. The contention is fallacious unless it can be maintained as a correct legal proposition that a request admits in advance the statements made in response. This would be a very dangerous doctrine, and finds no color of support in the law of evidence. If only that part of the reply refusing to make further remittances had been read, no harm would have been done; but, as has been stated, the letter was, in substance, a narrative of past events, of which there was no other evidence, and an argument to demonstrate that the accused had been guilty of a scheme to defraud Moody. It is also urged that the letter was admissible as a tacit admission by the accused of the truth of its statements, it having been proved that the accused did not reply to it. Admissions, of course, may be inferred from silence as well as from express statements, but it has been uniformly held by the courts that the failure to reply to a letter is not to be treated in a criminal or in a civil action as an admission of the contents of the letter. In Com. v. Eastman, 1 Cush. 215, the court said:

"The letters, however, if properly identified, would not, of themselves, authorize any inference against the defendants. They were only the acts and declarations of others; and, unless adopted or sanctioned by the defendants by some reply or statement, or by some act done in pursuance to their suggestion, they ought not to prejudice the defendants. Letters addressed to an individual, and received by him, are not to have the same effect as verbal communications. Silence in the latter case may authorize the inference of an assent to the statement made, but not equally so in the case of a letter received, but never answered or acted upon. So far as these letters might be shown by other proof to have been acted upon or sanctioned by the defendants, so far they would be competent evidence."

In People v. Green, 1 Parker, Cr. R. 17, the court said:

"The maxim, 'Qui tacet consentire videtur,' has also been applied between the parties to certain mercantile dealings; as where an account current was sent to the party by letter, and no objection made to it within a given time, established by convenience or by commercial usage. But it could not, in principle, be applicable to facts stated in a letter which the party was not bound or interested to answer. It would be placing a man entirely at the mercy of another if he was bound by what others chose to assert in addressing letters to him. In no case could his silence be considered an admission of such facts."

It could not be applicable to any case where the letter only tends to support a charge of guilt, and where it has been followed by no action, and no response on the part of the person receiving the letter. The same principle has been repeatedly applied in civil actions. Fairlie v. Denton, 3 Car. & P. 103; Gaskill v. Skene, 14 Q. B. 664; Learned v. Tillotson, 97 N. Y. 1; Bank v. Delafield, 126 N. Y. 418, 27 N. E. 797; Gray v. Ice Cream Co., 162 N. Y. 397, 56 N. E. 903, 49 L. R. A. 580.

We conclude that the assignment of error based upon the reception of the Moody letter has been well taken, and for that reason the judgment must be reversed.