# UNITED STATES

### v.

## CARLOS F. MORALES ET AL.

CRIMINAL, No. 481.

## IN THE MATTER OF THE APPLICATION OF CARLOS F. MORALES FOR A WRIT OF HABEAS CORPUS.

CRIMINAL, No. 819.

## IN THE MATTER OF THE APPLICATION OF MAURICIO JIMINEZ FOR A WRIT OF HABEAS CORPUS.

---

Criminal, No. 820.

1. Letters written by a person in the United States to other persons in the territory of Porto Rico, containing proposals for furnishing ships of war or arms, ammunition, and military stores, do not constitute evidence of a violation of the Penal Code of the United States, § 13, as amended in 1909, forbidding any person within the territory

United States v. Morales.

or jurisdiction of the United States to begin, set on foot, provide, or prepare the means for, any military expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people, with whom the United States are at peace, where there is no acceptance of such proposals.

2. An indeterminate offer to a single person of employment on the staff of a person then a private citizen, in the event of his becoming president of a neighboring republic, after he had become such president, and a statement that the means by which he expected to elevate himself to said office was an expedition to proceed from a point outside the jurisdiction of the United States against such neighboring republic, do not constitute any offense under the Penal Code of the United States, § 13, as amended and approved in 1909, forbidding anyone within the territory or jurisdiction of the United States to begin, set on foot, or provide, or prepare the means for, any military expedition or enterprise to be carried on from thence against the territory or dominions of any foreign prince or state with whom the United States is at peace.

3. Judicial notice may be taken of the fact that no state of war exists between the government of the United States and that of the Dominican Republic, although no treaty of amity between such countries is in existence.

CHARLTON, Judge, delivered the following opinion:

These cases came on for hearing on the separate petitions of Carlos F. Morales and Mauricio Jimenez for a writ of habeas corpus, under the following statement of facts:

Upon April 23, 1911, upon the complaint of Walter St. Elmo, Chief of the bureau of information of the government of Porto Rico, Carlos F. Morales, Mauricio Jimenez, and Zenon Toribio were charged with "conspiring with each other to organize an expedition in Porto Rico, with the intent to take the same to

Santo Domingo, and there form a revolution against the existing government there."

Whereupon, on application to Frank Antonsanti, commissioner of the United States for the district of Porto Rico, the commissioner issued his warrant for the apprehension of said Morales, Jimenez, and Toribio, directed to the marshal of the United States for the district of Porto Rico, and on April 24, 1911, said marshal made his return upon said warrant, stating that he had apprehended said defendants, had searched their apartments and persons, and had confiscated and attached documents and letters pertaining to the matter complained of, and that he had said persons and documents before the United States commissioner before named. On April 27, 1911, and after a hearing had before said commissioner, at which all the defendants were represented by counsel, and after full argument, said defendants Morales and Jimenez were found to have "unlawfully set on foot and prepared the means to organize a military expedition to be carried on from Porto Rico, to and against the Republic of Santo Domingo," in violation of § 13 of the Penal Code of the United States; and each of said defendants was held to bail in the sum of $2,500 to appear at the next term of the district court of the United States for the district of Porto Rico. Said defendants in default of bail were committed to jail, where they remained until May 7th, when, the bail required having been furnished, they were released from custody. The defendant Zenon Toribio was discharged by the commissioner for lack of evidence sufficient to connect him with the acts with which the defendants Morales and Jimenez were charged.

On October 17, 1911, the bondsmen of the defendants Morales and Jimenez having surrendered their persons into the cus-

tody of the marshal of this court, they thereupon, and upon the same day, filed each his separate petition for a writ of habeas corpus, and Byron S. Ambler, Esq., United States attorney for the district of Porto Rico, filed a motion to quash, in the nature of a demurrer to said petitions, setting out as a reason therefor that said applications, and each of them, did not, upon its face, contain facts sufficient to entitle the applicant to a writ of habeas corpus according to law, it manifestly appearing from the face of the application that the applicant will only be remanded if the writ should issue.

The petitions came on for hearing forthwith upon said October 17, 1911, there being attached to the petition, and specifically made a part thereof, all the letters, correspondence, and documents which had been found and attached by the marshal of the court in the apartments of the petitioners, as well as a transcript of the oral evidence given at the hearings held before the commissioner in April, 1911. The petitions, after stating that each of the petitioners is unlawfully imprisoned, detained, confined, and restrained of his liberty by the marshal of this court, at the court house of the district court of the United States for Porto Rico, and reciting the facts as to the apprehension of the petitioners, their hearing before the United States commissioner, his commitment, the release of petitioner on bail, the surrender of the petitioner by his bondsmen, and the fact that he was, at the time of the filing of said petition, in the custody of the marshal. After further allegation that the commissioner was wholly without jurisdiction in his said actions, for the reason that the petitioner has never been charged with any act constituting a crime or offense against the laws of the United States, or which is punishable thereunder, and that the petitioner had not been

guilty of any act within the district of Porto Rico so constituting a crime or punishable thereas, further alleged that the action of the commissioner in committing the petitioner was and is illegal and contrary to law, and null and void. And that no evidence of any kind was presented to the commissioner which tended to show that the petitioner had violated any law of the United States, or committed an offense or crime against the same, and that the evidence adduced before the commissioner failed to show probable cause for the belief that the petitioner had violated any law of the United States, or committed an offense or crime against the same.

In support of said allegations, the petitioner attached to and made a part of his petition the documents and transcript of testimony hereinbefore referred to, and prayed the issuance of a writ of habeas corpus directed to the marshal, commanding him to have the bodies of each of said petitioners before the court.

An examination of the letters found by the marshal in the effects of the petitioner Morales disclosed the fact to be that they were all letters which had been addressed to Morales from a place other than the island of Porto Rico; that they consisted of proposals by one Captain Sheridan, contained in letters written by him in New York city, and addressed to the petitioner Morales at New York city, in relation to furnishing to said Morales certain vessels and arms, ammunition, military supplies, and ship's furniture, for a military expedition to be directed by said Morales, from some point not specified, and against some government or country unnamed. There is no letter from Morales accepting said proposals, or any part of them, or acknowledging the receipt of said proposals, or in any way replying to the same. There is one letter, insufficiently identified, written

VI. Porto Rico—3.

by "Morales L." from Havana, and addressed to "My dear Mauricio," presumably the petitioner Jimenez, at St. Thomas. There is no letter written by the petitioner Morales from the island of Porto Rico, directed to anyone. There are also letters addressed, presumably, to the petitioner Morales from persons in the island of Bermuda, directed to no specific place, but there is no response from the petitioner Morales to any of said letters, nor any evidence contained in any of said letters that the petitioner Morales was doing or contemplating in the island of Porto Rico any act which constituted, or tended to show an intention to commit, a crime against the neutrality laws of the United States.

There were letters to and from various persons to the petitioner Jimenez at St. Thomas, by persons whose signatures were in no way identified, and consisted mostly of diminutive common names such as "Arturo," "Pedrito," "Emilito," etc. There are also several letters from one Deschamps addressed to "Pedrito" and another, but none addressed by Deschamps to either of the petitioners here. Aside from the fact that none of said letters contain any evidence of any act mentioned in § 13 of the Penal Code of the United States, within the district of Porto Rico, they were insufficiently identified, and were received by the commissioner over objection by counsel for the petitioners for that and other reasons then assigned, which were sufficient in law. Not one of them contained any evidence to show that either of the petitioners, within the district of Porto Rico, had done, or was contemplating doing, any act which constituted probable cause for believing that he, or either of them, was beginning, or setting on foot, or preparing or providing the means for, any military expedition or enterprise, to be carried on from Porto Rico against the territory or dominion of the Dominican Repub-

lic, or any foreign prince or state, or any colony, district, or people, with whom the United States were or are at peace.

The witnesses who testified orally at the hearings before the United States commissioner in the first case above, to wit, the United States *versus* Morales et al., consisted of the examination of the deputy marshal of this court, who identified the letters and documents above referred to, constituting exhibits for the government A to Z and AA to DD inclusive, as having been found by him in the apartments occupied by the petitioners, or one of them, within the district of Porto Rico, or upon the persons of said petitioners, or either of them.

. One witness, José Oller, had made affidavit, at the suggestion of the Chief of the Bureau of Information of the government of Porto Rico, Mr. St. Elmo, in which he stated that he had heard the petitioners make statements in relation to an expedition which they were contemplating from the Island of St. Thomas against the government of the Dominican Republic. Afterward, and on his oral examination before the commissioner, this witness stated that this affidavit had been extorted from him under duress, and denied every statement therein contained. The witnesses Suci and Pinero stated that the petitioners had never made any statement in relation to a military expedition which they were contemplating from Porto Rico against the Dominican Republic, and contradicted statements alleged by the witness Sulsona to have been made under circumstances which were impossible, according to his own statement.

There then remains the testimony of the witness Mariano Sulsona. He testified that he was an insular policeman on duty in the municipality of Rio Piedras; that one evening, prior to the apprehension of the petitioners in April, 1911, he being in

uniform, and in a public room of a restaurant in Rio Piedras called "La Gran Parada," various other persons being present at said time and place, that he there and then had a conversation with the petitioners, and particularly with the petitioner Morales, in the course of which he stated that Morales told him they had an expedition in St. Thomas which was to be directed against Santo Domingo; that under those circumstances, and in relation to the expedition to be directed from St. Thomas against Santo Domingo, witness alleged that Morales said that he would make him an officer on the staff of the President, Morales, and would pay him a certain salary for such service. Witness alleged various other conversations in relation to the insecurity of a "job" in Santo Domingo, for the reason that it was a very revolutionary country, and alleged that the petitioner Morales told him that he could hold the "job" so long as he, Morales, remained in power. Witness testified that he never had any further conversation with either of the petitioners, and that he did not even report the matter to his superior officer until two or three days after the conversation is alleged to have taken place.

This constitutes all the evidence that was introduced at the hearing before the commissioner on behalf of the United States, and under it, it is claimed that the petitioners have violated the neutrality laws of the United States, as set forth in § 13 of the Penal Code of the United States, as amended, which was approved on March 4, 1909, as follows:

"Sec. 13. Whoever, within the territory or jurisdiction of the United States, begins, or sets on foot, or provides or prepares the means for, any military expedition or enterprise, to be carried on from thence against the territory or dominions of any foreign prince or state, or of any colony, district, or people, with whom

the United States are at peace, shall be fined not more than three thousand dollars and imprisoned not more than three years." [35 Stat. at L. 1090, chap. 321, U. S. Comp. Stat. Supp. 1911, p. 1592.]

The foregoing is a re-enactment of the act of Congress approved April 20, 1818 (chap. 88, 3 Stat. at L. 449), which was an amendment of an act of Congress passed in 1794, upon the same subject.

It therefore becomes necessary to consider, first, whether there was any evidence before the commissioner which would constitute probable cause for believing that the petitioners, or either of them, had done or contemplated any act inhibited by § 13 of the Penal Code of the United States, supra. It is well settled that in order that a magistrate, either a committing magistrate such as the United States commissioner, or a judge of this court, may exercise the discretion with which he is charged, he must have before him a subject upon which his mind may act.

It was held in the case of Packer v. United States, 46 C. C. A. 35, 106 Fed. 906, that, as plaintiff had never acted on the letter which was the basis of the prosecution in that case, such letter formed no part of the res gestæ, and gave no subject upon which the mind of a magistrate or the minds of a jury might act, and that therefore such letter was not sufficient in law to be competent evidence of an offense alleged to have been committed. A similar holding was had in cases reported in 102 Fed. 573, 42 C. C. A. 504 (Nevada Co. v. Farnsworth) ; 3 L.R.A.(N.S.) 954, 72 C. C. A. 405, 140 Fed. 385, 5 Ann. Cas. 314 (Harrison v. Remington Paper Co.) ; and 86 C. C. A. 523, 159 Fed. 655. (Varley Duplex Magnet Co. v. Ostheimer). The proof in this case failed entirely to show any acceptance on the part of either

of these petitioners of any proposals for furnishing ships of war, or arms, ammunition, and military stores, as contained in the offers of Captain Sheridan. Such letters did not, then, under the rulings of the cases hereinbefore cited, constitute any evidence of the acts which the petitioners are alleged to have committed. There is no letter, as has been said hereinbefore, from either of the petitioners, written from the Island of Porto Rico, which shows the petitioners, or either of them, to have contemplated any act in contravention of § 13 of the Penal Code. Nor do letters, such as were introduced in evidence before the commissioner in this case, passing between stranger, constitute any evidence. They are clearly not evidence, not only because nonadmissible as hearsay, as was held in the case reported in 142 Fed. 78, (Security Trust Co. v. Robb), 73 C. C. A. 302, but also as constituting in themselves and from their very nature no statement which, in the absence of affirmative acts of petitioners, or either of them, could clothe them with evidential value.

. ' The oral testimony contains no statement which could constitute any evidence against the petitioners, or either of them, for an infringement of the neutrality laws of the United States, unless it should be considered that the testimony of the witness Mariano Sulsona should be considered as such. Casting aside, and not considering, the ridiculous improbability of the statement that a man of the age, knowledge, and experience of Carlos F. Morales, or Mauricio Jimenez, making a statement such as the witness Sulsona detailed, to an officer of the police in uniform, within a few minutes of their first introduction, in the public room of a public house, surrounded by strangers coming in and going out, and taking the statements of the witness in their entirety as having been made, did they constitute an offense

United States v. Morales.

under § 13 of the Federal Penal Code? The inhibition is against every person who, "within the territory or jurisdiction of the United States, begins, or sets on foot, or provides or prepares the means for any military expedition or enterprise, to be carried on from thence against the territories or dominions of any foreign prince or state, . . . with whom the United States are at peace." Taking the testimony as true, then, it amounts to an indeterminate offer to a single person, of employment on the staff of a person then a private citizen, in the event of his becoming president of a neighboring republic, after he had become such president, and a statement that the means by which he expected to elevate himself to said office was by an expedition to proceed from a point outside the jurisdiction of the United States against such neighboring republic. In every reported case which has arisen and been determined for an infraction of the neutrality laws of the United States under the provisions of law which now constitute § 13 of the Federal Penal Code, the "expedition or enterprise" has consisted of a more or less numerous body of men, in a more or less organized condition, proceeding or intending to proceed from a point within the United States, whether accompanied by the equipment necessary for a military expedition or enterprise, or with the definite purpose of proceeding to a point where such military equipment was situated; and in no case has it been held, nor in my judgment could it rightly be held, that the solicitation of one person, under circumstances detailed by the witness Sulsona, for future employment, after the happening of an indefinite event, to be brought about by an expedition proceeding from a point outside the jurisdiction of the United States, and not within the district of Porto Rico, in any sense constituted such military expedition

or enterprise as is contemplated by law. The statement itself constitutes a *reductio ad absurdum.*

The case of Wiborg v. United States, 163 U. S. 632, 41 L. ed. 289, 16 Sup. Ct. Rep. 1127, 1197, is cited by the United States attorney as authority for the contention of the government. In that case the plaintiffs in error were charged with preparing the means for a military expedition to be carried on from the port of Philadelphia against the government of Spain in the Island of Cuba. Proceeding from the port of Philadelphia to the harbor of New York, the vessel commanded by the plaintiffs in error took on board a considerable number of persons and military equipment and stores. The facts in this case, as in all others, which have been brought and decided under what now constitutes article 13 of the Federal Penal Code, contained elements of organization, either expressed, or inevitably to be implied from the surrounding conditions, that the purpose was or was not such as constituted an infringement of law, but every case had that character of numbers and organization which fair- ly entitled it to be considered an "expedition or enterprise," as set out in the statute. The facts in this case do not warrant such conclusion here.

The court in the foregoing considerations and review, in no sense has attempted to inquire as to the admissibility of the testimony, either documentary or otherwise, but its examination and consideration have proceeded solely with the purpose of ascertaining whether any evidence was adduced which gave basis for the exercise by the committing magistrate of his discretion, as constituting either an overt act, or probable cause for concluding that the petitioners, or either of them, contemplated such act in the manner and from a place covered by the statute. In

United States v. Morales.

my opinion no evidence was adduced, upon which the mind of the committing magistrate could act as a subject, and that, therefore, there was no evidence before him which warranted the commitment of the petitioners.

What constitutes a "military expedition," in the meaning of the statute, was thus defined in the case of United States v. Hart, 78 Fed. p. 868:—

"A military expedition, in the meaning of the statute, comprehends any combination of men, organized in this country, provided with arms and ammunition, to go to a foreign country, and make war on its government. If the men have combined and organized here, though in a rudimentary, imperfect, and inefficient way, voluntarily agreeing to submit themselves to the orders of such persons as they have selected, this is sufficient. It is not necessary that they shall have been organized according to military regulations, or uniformed, drilled, or prepared for efficient service; nor that arms shall be carried on their persons, here, or on their way; but only that they shall have been provided for use when occasion requires. And it is immaterial whether the expedition intends to make war as an independent body, or in combination with others, in the foreign country.

It is lawful for men, many or few, to leave this country as individuals, without combination or organization here, to go abroad, even by the same vessel, with the purpose of enlisting with a body of insurgents to fight against a foreign government, and it is immaterial that the vessel also carries arms, as merchandise, which are to be carried on shore in packages, as merchandise, by the men, who so intend to enlist. And the transportation of such persons, knowing their intent, constitutes no offense."

United States v. Morales.

. If the test supplied by this definition is applied to the testimony of the witness Sulsona in this case, it is at once apparent that the state of facts testified to by him constitutes no infringement of the law, and constitutes no evidence of any act prohibited by such law.

I yield to no man in my detestation of the breach of the laws of hospitality which is committed by aliens who use the territory of the United States as a base for revolutionary operations to be directed against a government with which we are at peace; but the law of the United States throws its protection equally around an alien who is a denizen in its territory, and to a citizen of the United States. The court has taken judicial notice of the fact that no state of war exists between the government of the United States and that of the Dominican Republic, although no treaty of amity between said countries is in existence.

I am therefore of opinion that no evidence was produced before the commissioner of the United States for the district of Porto Rico at the hearing held by said commissioner, under which the petitioners were apprehended and taken into custody, and they are therefore discharged.