## ROBB v. SECURITY TRUST CO.

### (Circuit Court of Appeals, Third Circuit. March 9, 1903.)

#### No. 26.

**1. INDEMNITY—RIGHTS OF INDEMNITOR—APPEAL.**

An indemnitor, who has been vouched to defend in a suit brought against a surety whom he has agreed to indemnify, is entitled, at his own expense and charges, to fully defend such suit, and to conduct in good faith the whole litigation from beginning to end. Such litigation, in our opinion, includes the right to prosecute, under the laws and practice of the jurisdiction in which the suit is brought, an appeal from, or writ of error to, an adverse decree or judgment of the court of first instance.

**2. SAME—DISCHARGE OF INDEMNITOR—PREVENTING PROSECUTION OF APPEAL—QUESTION FOR JURY.**

An indemnitor of the S. Co., surety on a forthcoming replevin bond, was notified to defend an action thereon, which he did. After an adverse judgment it was agreed that a writ of error should be sued out, and the indemnitor made arrangements with a surety company satisfactory to the S. Co. to execute the necessary bond. During the 10 days within which the bond could be filed and the supersedeas obtained, the S. Co., with knowledge, acquiesced in the arrangements, and on the last day on which the bond could be executed a bond properly drawn and executed by the surety company was presented to the S. Co. for its signature, according to the uniform practice, when it for the first time refused to execute the bond or continue the litigation. The indemnitor sued out the writ of error in the name of the S. Co., without a supersedeas, to which the S. Co. subsequently objected, and, after paying the judgment appealed from, notified the indemnitor that, unless further security was given, it would move to dismiss the appeal, whereupon the writ of error was discontinued by the indemnitor. *Held*, that whether such facts showed an unjustifiable interference by the S. Co. with the indemnitor's right of appeal, sufficient to discharge the indemnitor, was for the jury.

**3. SAME—EVIDENCE.**

Where, in an action against an indemnitor to recover a liability of the surety on a forthcoming replevin bond, defendant claimed that the surety's acts in preventing an appeal from the judgment against the surety on the bond were influenced by the fact that the surety's directors were interested in the enforcement of the judgment in replevin, and that such judgment was for their use and benefit, evidence as to who the surety's directors were, and who were the real parties interested in the judgment, was admissible.

Acheson, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 116 Fed. 201.

Robert H. McCarter, for plaintiff in error.

John F. Harned, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is a writ of error to the Circuit Court of the United States for the District of New Jersey. The Security Trust Company, the defendant in error, brought an action in contract in that court, against Robb, the plaintiff in error. The action was founded on a bond of indemnity given by Robb to the Security Trust Company, to save it harmless, etc., in becoming surety in a property

bond given in a replevin suit, brought in the Supreme Court of the state of New Jersey. The record discloses the following facts:

In the month of June, 1897, the Ft. Wayne Electric Company brought an action of replevin against the Franklin Electric Light Company, at Cape May, to recover goods sold by the plaintiff to the defendant, under a claim of title reserved by the contract in the vendor until full payment was made. Robb, the plaintiff in error, in behalf of the defendant in the replevin suit, procured the Security Trust Company, the defendant in error, to become a surety in a forthcoming property bond to the sheriff, by which the defendant in the replevin suit was allowed to retain possession of the goods replevied, pending the suit. The plaintiff in error, Robb, indemnified the Security Trust Company against loss, by reason of becoming surety, as aforesaid, in and by an indemnifying bond. The action of replevin resulted in a judgment in favor of the plaintiff, based upon the plaintiff's ownership and right to possession of the property. Suit was then commenced against the Security Trust Company, as surety in the replevin bond, by the Ft. Wayne Electric Company. The Security Trust Company duly notified the plaintiff in error, Robb, to appear and defend the suit as its indemnitor. Pursuant to this notice, Robb appeared by his counsel, and conducted the litigation with the assistance of, but without expense to, the trust company. A protracted trial resulted in a verdict in favor of the plaintiff in replevin and against the Security Trust Company, and judgment was entered in the Supreme Court, upon said verdict, against the trust company, on the 22d day of January, 1901, for the sum of $14,621.88.

Under the law and practice of New Jersey, this judgment was subject to review by a writ of error, at any time within three years from its date. If, however, it was desired to prevent the issuing of an execution and recovery thereon, it was necessary to file, within 10 days from the date of judgment, a bond with surety to prosecute the writ with effect. By the statutes of New Jersey, such bonds could be executed jointly with the surety by the plaintiff in error, or any substantial person for him. The uniform practice appears to have been, that the plaintiff in error executed the bond with the surety. There is testimony tending to show that the secretary, or other executive officer, of the defendant in error—the Security Company, who actively co-operated with the indemnitor at the trial, gave him to understand all through the litigation, as well as expressly promised, that in case of an adverse result in the suit against the Security Company, a writ of error would be sued out, to be prosecuted by and at the expense of the indemnitor in the Court of Errors and Appeals of the state of New Jersey. That pursuant to such understanding, upon the entry of the judgment in the court below, the indemnitor, at his own expense, sued out a writ of error in the Court of Errors and Appeals, in the name of the said Security Company, and proceeded to have drawn up a bail bond with a proper surety, to wit, the City Trust Company of Philadelphia, in order to obtain a supersedeas, as provided by law in that behalf. The testimony also tends to show that the president of the trust company designated the said City Trust Company as a surety satisfactory to him, and promised to

complete the bail bond with that company as surety, so that it might be filed within the 10 days necessary to obtain a supersedeas. The testimony also tends to show that, in the interval between the entry of the judgment, on the 22d day of January and the 31st of that month, communications were had between the president of the Security Trust Company, the defendant in error, and the representative of the plaintiff in error, in which the information was given that arrangements had been made with the said City Trust Company to go on the bail bond as surety, and that this information was acquiesced in as in accordance with the general understanding between the parties. It is not disputed that $144 was paid by the plaintiff in error, Mr. Robb, to the said City Trust Company, as its charge for becoming surety in the supersedeas bond, and that Mr. Robb arranged also to indemnify the said company against loss. There is testimony tending to show that the counsel for the plaintiff in error, relying upon such an understanding with the defendant in error, presented a properly drawn bond, executed by the said City Trust Company, as surety, to the Security Trust Company, the defendant in error, on January 31st, and that not until that day was any notice received by the plaintiff in error, or his representatives or counsel, that there was any objection on the part of the Security Company to executing such a bond. It is in testimony that on that day, the secretary of the Security Company telegraphed from Camden, N. J., to the counsel of the plaintiff in error in Newark, in that state:—"We don't care to continue bond;" and that afterwards, when another representative of the plaintiff in error called at the office of the Security Company in Camden, the secretary of the company said:—"Our board of directors do not care to continue this litigation any further. It is doing us no good;" and that afterwards, a proposition for the deposit of $15,000, or additional collateral security, was made by the Security Company to the representative of the plaintiff in error. As this was in the afternoon of the last day when a bond could be executed for the obtaining of a supersedeas, it is contended by plaintiff in error that it was then too late to comply with such a request, even if it had been a reasonable or proper one, as it was necessary to file the bond the next day in Trenton, while the parties who were then transacting the business were in Philadelphia and Camden, N. J. Within two weeks, thereafter, the plaintiff in error was notified by the Security Trust Company that execution had been issued upon the judgment in the replevin suit, and that upon the demand of the sheriff, in whose hands the execution was, it had paid the same, and that it would look to him to be indemnified, according to the obligation of his bond. It appears also that the judgment at the suit of the Ft. Wayne Electric Company against the said Security Trust Company, was for the use of John J. Burleigh, a director of the Security Trust Company, and an offer by the plaintiff in error in the suit below, to show that other of the directors of the Security Trust Company were interested in the said judgment against that Company, was denied.

The writ of error, however, which was sued out by the attorney of the plaintiff in error, pursuant to the general authority given by the Security Trust Company, on the 23d of January, 1901, continued

pending in the Court of Errors and Appeals of the state of New Jersey, and capable of prosecution, notwithstanding the failure to file the supersedeas bond within the ten days prescribed by law. If the said writ of error had been prosecuted with effect, the judgment below of the said court would have been reversed and the Security Company would have been entitled to a writ of restitution.

On the 6th of April, however, the Security Company, by its attorney, notified the attorney of the plaintiff in error, that the said writ of error in the Court of Errors and Appeals of New Jersey was being prosecuted without authority from the Security Company, and that unless the amount of the judgment below was paid, or security sufficient to reimburse said Security Company were deposited, he, the said attorney for the Security Company, would move the said Court of Errors and Appeals for the dismissal of the writ, on the ground that the same was being prosecuted without authority. Thereupon, the attorney for the plaintiff in error here, who had sued out the writ in pursuance of his alleged understanding with the Security Company, and who had appeared in the litigation in the lower court at the request and with the co-operation of the said company, discontinued the said writ of error. In this, we think he was justified.

In the suit in the court below, the plaintiff, the defendant in error here, having proved the judgment against it as surety in the replevin bond, and the issuing of execution thereon, and payment of the same by it, and the undertaking of the plaintiff in error, Mr. Robb, in his bond of indemnity to it, to indemnify and hold it harmless by reason of its said suretyship, demanded peremptory instructions from the court for a verdict in its favor, notwithstanding the testimony adduced by the defendant, the substance of which has been above recited. The plaintiff in error, the defendant below, also asked for peremptory instructions for a verdict in his favor. The learned judge of the court below granted the request of the plaintiff, the defendant in error here, and directed a verdict in its favor, for the sum of $14,621.88. The assignments of error relate to the propriety of the action by the court below in granting the request for a peremptory instruction to find for the plaintiff.

A careful consideration of the testimony sent up to us in this record, has brought us to the conclusion that the learned judge of the court below erred in thus directing a verdict for the plaintiff. In the reasons given by him for his action, the learned judge says:

"There are some things that are clear in my mind with regard to this, and I confess that there are some things which are not. I am clear, for instance, that the Security Trust Company was not bound to prosecute the writ of error themselves. On the other hand, I am also clear that Mr. Robb, as surety on the replevin bond, was entitled to have the case, as it had been tried before Justice Garrison in the Supreme Court, reviewed by a writ of error, and that, if the Security Trust Company did anything to impair that right, it would, under the decisions which have been cited to me, have released Mr. Robb, the surety."

We think the principles of law governing this case are here clearly stated. An indemnitor, who has been vouched to defend in a suit brought against a surety whom he has agreed to indemnify, is entitled, at his own expense and charges, to fully defend such suit, and to con-

duct in good faith the whole litigation from beginning to end. Such litigation, in our opinion, includes the right to prosecute under the laws and practice of the jurisdiction in which the suit is brought, an appeal from or writ of error to, an adverse decree or judgment of the court of first instance. If there is manifest error in the judgment against the surety and indemnitee, by which the indemnitor's liability would be fixed, if unreversed, it would be clearly a denial of justice to such indemnitor and an impairment of his right under his contract to take from him the opportunity, provided he proceed in good faith and with reasonable promptness, to demonstrate such manifest error to the proper court of review. Stark v. Fuller, 42 Pa. 320; American Surety Co. v. Ballman (C. C.) 104 Fed. 634.

We only differ from the learned judge of the court below, in that we think there was testimony in this case tending to show that the Security Company did do something to impair the right of Mr. Robb to have the judgment against the said Security Company reviewed in the appellate court by a writ of error, and we think that it should, therefore, have been submitted to the jury to say whether the testimony so tending was sufficient to establish the fact of an improper and unjustifiable interference by the Security Company with that right of the plaintiff in error. The contract of indemnity is in some respects sui generis, but, as in the case of other contractual obligations, the law of the contract depends upon and is found in the terms of the particular contract itself, and in the legal implications arising from those terms. The bond of indemnity in this case stipulated that Thomas Robb, the plaintiff in error, should save and keep harmless the Security Trust Company from and against all loss, damage, etc., which the company shall or may at any time sustain, incur or be put to by reason or in consequence of its having become surety in the replevin bond already mentioned, or in or about defending any action, suit, or other proceeding which may be commenced or prosecuted against the said company upon its said bond. The well-settled interpretation of such undertaking is that the liability of the indemnitor is not fixed, except by definitive judgment against him on the replevin bond referred to. In any such suit, the indemnitee must, under the contract of indemnity, either in good faith defend himself, or vouch the indemnitor to defend the suit at his (the indemnitor's) own costs and charges, rendering such assistance as he may be called upon by the indemnitor to render in facilitating and furthering such defense. Whether the indemnitee be bound to notify the indemnitor, or not, it is not necessary here to decide, but where, as in this case, the indemnitor has been vouched to defend the suit, we consider the law to be that full and ample scope to make such defense should be afforded to the indemnitor by the indemnitee, including all necessary assistance in permitting and facilitating the review in an appellate court of an adverse judgment in a court of first instance. That is, the indemnitor is entitled, under such circumstances, to all the rights of defense to such a suit, including the right of review, which belonged to the indemnitee as the real party thereto. Under the law of New Jersey, the right to a writ of error is absolute. It was as much the right of the plaintiff in error as indemnitor, under the circumstances disclosed by this record, to have taken the case to a re-

viewing court, as it was to defend the suit against the Security Company in the lower court, provided he exercised that right in good faith and with reasonable promptness, and it was as much the duty of the Security Company, as indemnitee, to refrain from obstructing or interfering with that right, as it was to offer every opportunity for the proper defense of the suit in the court below. These reciprocal rights and duties arise from the law of this particular contract. The testimony disclosed by the record in this case, above briefly summarized, in our opinion, tends to show that this right of the indemnitor (Robb) to fairly and fully exercise and enjoy his right to prosecute a writ of error to the judgment against the Security Company, was interfered with and impaired by the indemnitee, the defendant in error, contrary to the reciprocal obligation resting upon it as party to the bond of indemnity.

The second assignment of error raises another and different question, to which it is necessary to advert. When Henry D. Robb, nephew of the plaintiff in error, was upon the stand, he had testified, as already stated, that the Secretary of the Security Company, Mr. Polhemus, had told him on the 31st day of January, the last day when it was possible to perfect the supersedeas bond:—"Our Board of Directors do not care to continue this litigation any further," and he (Robb) said:—"The Directors" (meaning the directors of the Security Trust Company, defendant in error) "are fighting us, and you lie down at the eleventh hour and refuse to execute the bond." He was then asked by counsel for the plaintiff in error, as follows:

"Q. You said you said that their directors were fighting. Do you know who were the real parties in interest beside Mr. Bell, in this suit against Thomas Robb? A. I do. (Objected to by Mr. Pancoast as immaterial, the real question being what was actually done.) Mr. McCarter—We think it is material by showing the animus of the Security Trust Company in suddenly changing its base of operations. The Court: I think your position is correct, Judge Pancoast, that we are only concerned in the facts; but it is a question as to how far the fact may be explained by the relation existing to those facts by other parties. I will allow you to show who Mr. Burleigh was. (Exception for plaintiff prayed and allowed.) Q. Mr. Robb, were you in court, in the case at Camden, when Judge Pancoast, representing the plaintiff in this suit, announced who beside Mr. Burleigh were the real owners of the Burleigh claim? A. I was. Q. Who did he so declare? (Objected to as immaterial, irrelevant, and incompetent.) Q. What relation, if any, does Burleigh hold, and did he hold, at the time of which you are speaking, to the Security Trust & Safe Deposit Company or the Security Trust Company? (Same objection. Objection overruled. Exception prayed and allowed.) A. He was a director; at that time he was a director; I don't know that he was any other officer; he was a director. Q. (By the Court) A director in what? A. In the Security Trust Company of Camden. Q. (By Mr. McCarter) Do you know who were the other, and who are the other real plaintiffs interested in this judgment? (Same objection. Objection sustained. Mr. McCarter, in behalf of defendant, prays an exception to this ruling of the court.)"

It appears by the pleadings that the suit of the Ft. Wayne Electric Company against the Security Trust Company, and the judgment in the same, which the latter was compelled to pay, was for the use of John J. Burleigh. It also appears from the testimony above quoted, that Burleigh was a director in the Security Trust Company, and from the testimony of Mr. Bullitt, that Mr. Polhemus, secretary of the com-

pany, said to him, (speaking of the directors of the Security Trust Company) "A good many of them were interested in this claim," and that Judge Pancoast announced during the trial of the case in Camden, that others beside Burleigh, who was a director, were the real owners of the Ft. Wayne claim. We think the testimony objected to and ruled out, should have been admitted. Taken in connection with the testimony bearing upon the conduct of the defendant in error, showing or tending to show interference with and obstruction of the exercise by Robb of his right to prosecute a writ of error to the judgment against the Security Trust Company, and the promptness with which execution was issued upon that judgment, and paid by the defendant in error, the excluded testimony might have had some bearing upon the contention of the plaintiff in error, that the action of the trust company was prompted by the direct personal interest which several of its directors, including Mr. Burleigh, had in the collection of the Ft. Wayne judgment.

Let the judgment be reversed, and a venire de novo awarded.

ACHESON, Circuit Judge (dissenting). I dissent from this reversing judgment. The plaintiff below (the Security Trust Company) made out a clear, prima facie case. The defense set up was that the defendant (Robb) was released from liability on his indemnity bond because the plaintiff had declined to execute the supersedeas bail bond tendered by the defendant, and had interfered with the prosecution of the writ of error which the defendant had sued out. Now, the plaintiff did decline to execute a supersedeas bond, as principal therein, and in connection therewith a judgment bond of indemnity to the proposed bail in error, the City Trust, Safe Deposit & Surety Company of Philadelphia. In its explanatory letter of January 31, 1901, the plaintiff declared its willingness to sign a bond which would "afford Mr. Robb an opportunity to litigate the question to the utmost," but declined to assume additional responsibility unless indemnified; and later, on the same day, in an interview with the representative of Mr. Robb, the plaintiff offered to execute the bail bond as prepared if indemnified, but this offer Mr. Robb rejected. It is plain to me that until the presentation of the prepared papers on January 31st the plaintiff did not understand the nature of the proposed obligation it was asked to assume. The plaintiff's request for indemnity, I think, was entirely reasonable. But, assuming that the plaintiff previously had agreed to execute the appeal bond as tendered, how was the defendant damnified by its refusal to sign? That refusal did not prevent Mr. Robb's taking a writ of error with supersedeas of execution. The signature of the Security Trust Company to the appeal was not at all necessary. Upon no just principle, then, could its refusal to sign operate to release the defendant Robb. It is idle to say that there was no time to prepare and perfect a new appeal bond. The bond was not due until February 1st, and Trenton is within an hour's ride of Philadelphia. In fact, Mr. Robb did sue out a writ of error, which, if prosecuted with success, would have secured to him a writ of restitution. Did the plaintiff (the Security Trust Company) so interfere with the prosecution of the writ of error as to release the defendant (Robb)?

Here resort must be had to the correspondence between the attorneys of the respective parties. Mr. Harned's letter to Mr. McCarter was as follows:

Camden, N. J., Apr. 6, 1901.

Robert H. McCarter, Esq., Counsellor at Law, Newark, N. J.—Dear Sir: It has just come to my attention that you are prosecuting a writ of error in the name of the Security Trust Company in a suit of the Fort Wayne Electric Company against that Company. You are probably aware that in this matter execution was issued, and the defendant Company compelled to pay the judgment, amounting in all to some $15,000. Your use of the Trust Company's name, as you well know, is without authority, and I am directed by the Company to notify you that, unless you, at once, secure them by the payment of the money already advanced by them, or by a deposit of securities amply sufficient to reimburse them, they will move before the Court of Errors for a dismissal of your writ upon the ground that you are using the name of the Security Trust Company without their authority or consent. Failing to hear from you, I shall, at once, take steps as above indicated.

Yours truly, John F. Harned.

To this letter Mr. McCarter made the following reply:

Newark, N. J., April 13, 1901.

John F. Harned, Esq., Camden, N. J.—Dear Sir: In reply to your favor of April 6th I beg to say that you are mistaken in the statement that my use of the Trust Company's name was without authority, but inasmuch as that authority now appears revoked by your letter, I am of course compelled, against my judgment, and contrary to my views of what is proper, to announce that I will not further prosecute the writ of error to which you refer.

Yours very truly, Robert H. McCarter.

The purpose of Mr. Harned's letter undoubtedly was to secure his client from loss arising from the delays of litigation. To his reasonable call for security there was no direct response. Mr. McCarter's answer ignored the subject. Mr. Harned's letter was by no means a peremptory order to dismiss the writ of error. Mr. McCarter did not then regard it as an absolute order to dismiss, for he wrote merely that he would not "further prosecute the writ of error." The utmost that can be said fairly is that Mr. Harned's letter was a notification to Mr. McCarter not to further prosecute the writ of error unless the trust company was reimbursed the money it had been compelled to pay, or was secured against loss. Mr. McCarter was not directed by that letter to take any affirmative action in the pending suit in error. Mr. Harned reserved to himself positive action. This, it seems to me, is the reasonable interpretation of the correspondence; and, evidently it was so understood by the parties themselves. Both sides avoided immediate action. The matter was allowed to rest for a period of six months. Then, on October 11, 1901, Mr. Robb's attorney, without communicating with, or giving any warning to, the Security Trust Company or its attorney, went into the Court of Errors and Appeals, and procured an order dismissing the writ of error. The order, it is true, was made as of April 13, 1901, but it was procured on the 11th of October. The indorsement upon the order of dismissal is, "Filed October 11, 1901, as of April 13, 1901." In the circumstances, the procuration of that order must be regarded, I think, as the voluntary and deliberate act of Mr. Robb. He can-

not, in my judgment, justly claim that this order of dismissal, made upon the motion of his own attorneys, released him from the obligation of his bond here sued on.

As there was no conflict of evidence in respect to the material facts, the court, I think, rightly directed a verdict for the plaintiff.