Fidelity & Deposit Co. v. Henry et al.

[69 South. 1011.]

1. Indemnity. *Liability of indemnitor. Estoppel. Accord and satisfaction. Cost and expenses.*

Where plaintiff, a surety upon a building contract took a bond of indemnity from defendants and upon default of the principal in the building contract bond, notified defendants to defend the action brought upon the original bond, and defendants and plaintiff jointly appealed from a judgment against them, and before the appeal was decided plaintiff settled without the knowledge of defendants for less than the amount sued for, and stipulated that the judgment of the court below might be affirmed without opinion, and then sued defendants upon the bond of indemnity. In such case the settlement without defendants' knowledge released them from liability.

2. Indemnity. *Liability of indemnitor. Cost and expenses.*

Where the surety on a building contract bond settled a suit thereon without the knowledge of the indemnitors, the surety was not estopped to recover from such indemnitors the cost and expenses of an appeal for which they were liable under the contract of indemnity.

APPEAL from the circuit court of Warren county.

HON.. H. C. MOUNGER, Judge.

Suit by the Fidelity and Deposit Company against Pat Henry and another. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Hirsch, Dent, & Landau* and *Montgomery,* for appellants.

*Catchings & Catchings,* for appellee.

STEVENS, J., delivered the opinion of the court.

The facts will be stated largely from the brief and in the language of counsel for appellant:

"On March 27, 1907, the J. H. Jaffray Construction Company of Vicksburg, Contractors, entered into a written contract with Mrs. Wm. B. Levy of that city, for the building and completion for her of a two-story brick veneer residence on her certain lot in that city, according to the plans, specifications, and drawings made by the architect, one Michael J. Donovan, acting for Mrs. Levy, for the sum of ten thousand and four hundred (10,400) dollars.

"By the terms of the contract, no payments were to be made until a satisfactory bond had been accepted. The work was commenced on the contract and thereafter, to wit, on May 13, 1907, the J. H. Jaffray Construction Company executed and delivered to Mrs. Levy a bond in the penal sum of five thousand (5,000) dollars, with the appellant company as surety, conditioned for the faithful performance by the Jaffray Construction Company of their contract aforesaid with Mrs. Levy, according to the terms, covenants, and conditions thereof.

"On the same day that the last-mentioned bond was executed, the J. H. Jaffray Construction Company executed and delivered to the appellant company its bond of

indemnity in the penal sum of twenty-five hundred (2,500) dollars, with Pat Henry and T. R. Foster (appellees herein) as sureties, reciting therein the execution of the bond for five thousand (5,000) dollars, on which the appellant was the surety for the J. H. Jaffray Construction Company, at the special instance and request of the obligors, and conditioned that the obligors in said twenty-five hundred (2,500) dollar bond of the J. H. Jaffray Construction Company, and appellees 'shall and do pay in advance the premiums or charge of fifty-two ($52) dollars made by appellants for executing its bond and continuing the same so long as ·the company's liability on the said bond or obligation shall continue, and the said liability on said bond shall continue so long as the above-recited bond shall be in force and until the company shall be discharged or released from any further liability thereunder, and until sufficient notice, in writing, ·of the termination of the said bond and the liability there-under shall be served upon the company, and shall hold and keep harmless the company from and against any and all loss, damages, costs, counsel fees, charges, and expenses of whatever nature or kind which the company shall or may at any time, incur, sustain or be put to, for or by reason, or in consequence of the company having given and executed the said bond; also shall reimburse the company for any and all moneys, with interest, advanced or loaned by the company to the contractor for the purpose of said contract; also for all costs, counsel fees, and expenses which it may incur in investigating any application for advance or loans, or in or about prosecuting or defending any action, suit or other proceedings which may be commenced or prosecuted against said contractor or against the company, upon the said bond or in anywise in relation thereto.' "

It is the further contention of appellant that the construction company failed to perform its contract with Mrs. Levy, and that Mrs. Levy was compelled to em-

ploy another firm of contractors to complete the building, and that she did complete the building at an additional cost to her of three thousand, seven hundred and sixty-four dollars and fifty cents. For this demand she brought suit against the J. H. Jaffray Construction Company and the appellant, its surety, in the circuit court of Warren county and recovered a judgment at the April term, 1909, for three thousand, eight hundred and ninety-eight dollars and forty-three cents and costs.

It appears from the record that immediately upon the institution by Mrs. Levy of the suit against appellant it notified appellees, as indemnitors, of the pendency of this suit and called upon them to appear and defend it. Appellees are themselves attorneys, and at that time Mr. Henry was a member of the law firm of Henry, Fox & Canizaro. In pursuance of the notice given appellees, they requested the firm of Henry, Fox & Canizaro to defend the suit of Mrs. Levy; and thereupon this firm, in connection with the law firm of Hirsch, Dent & Landau, the attorneys advising with and representing appellant about this matter at the time the suit was begun, appeared for the defense, filed the necessary pleas, and jointly tried the case in the circuit court. When the adverse judgment was rendered against the construction company and appellant, its surety, both firms agreed that an appeal should be prosecuted to the supreme court by appellant. An appeal bond was given and the case removed to the appellate court. Mr. Fox for and on behalf of appellees, and Mr. Hirsch for appellant, jointly prepared and had printed and filed in the supreme court a brief for the appellant. That cause was submitted on briefs in the supreme court and was ready to be decided when Mr. Hirsch, as counsel for appellant, compromised and settled the whole case by the payment of three thousand one hundred and twenty-five dollars and entered into a written agreement with counsel for Mrs. Levy that the judgment of the lower court might

be affirmed without an opinion. This agreement was thereupon filed in the supreme court, and based thereon judgment was entered against appellant for the full amount, interest, and damages. Some time prior to this settlement, Mr. Hirsch told Mr. Henry that a proposition to settle the case was pending and being considered. Mr. Henry protested against any settlement being made. The settlement was negotiated and concluded without the knowledge or consent of Mr.. Foster or of his counsel. Mr. Henry had no notice that the settlement had been in fact made until after the cause was affirmed by the supreme court. After the case was affirmed by consent, appellant paid three thousand, one hundred and twenty-five dollars in full settlement, an amount about one thousand and one hundred dollars less than the full amount shown to be due by the mandate of the supreme court. There were two agreements entered into between the attorneys for Mrs. Levy and the firm of Hirsch, Dent & Landau for appellant as follows:

"In the above-styled cause (after styling), it is agreed that this case shall be affirmed without opinion."

And, after styling the cause:

"In the above-styled cause it has been agreed that the appeal herein shall be affirmed, and it is now further agreed between counsel for appellant and appellee that the judgment may be settled in full as between the parties to this agreement for the sum of three thousand, one hundred and twenty-five dollars, with interest from this date, and payment of all costs by appellant."

Both agreements are dated March 11, 1910 and the second agreement was not filed in the supreme court. After paying the agreed amount appellant instituted the present suit against appellees, alleging in its declaration the execution and delivery of the indemnity bond, charging a breach thereof, and averring that it was forced to pay the "judgment, interest, costs, damages, and attorneys' fees in the sum of about five thousand

dollars,'' and demanded judgment for the full penalty of the bond of indemnity. A copy of the judgment was filed as an exhibit to the declaration. Appellees each filed the general issue and special pleas. These special pleas recited the history of the first lawsuit, charged that appellees were vouched to defend the action of Mrs. Levy, and set forth and pleaded the settlement made by appellant without their knowledge and consent, and charged that appellant was now estopped to recover anything and that appellees had been released from all liability on their contract of indemnity. Replications were filed to the special pleas and a jury was waived and the cause thereupon heard by the circuit judge. The trial judge, after hearing evidence for both parties, found in favor of appellees, and from this judgment appellant appeals, assigning as error the rendition of the judgment in favor of appellees as defendants in the court below, and the holding by the trial court that appellant was not entitled to judgment.

On the trial appellant introduced the judgment which it compromised and settled, the bond of the construction company in favor of Mrs. Levy, the contract between Mrs. Levy, and the construction company, the indemnity bond given by appellees in this case, the court files in the case of Mrs. Levy against the construction company and appellant in the circuit court as well as in the supreme court, the agreements between private counsel for appellant and counsel for Mrs. Levy, and the oral testimony of Mr. J. Hirsch. After the plaintiff had rested, the defendant introduced Mr. Carl Fox and also appellees as witnesses in their own behalf. There was proof of certain expenses, court costs, and attorney's fees incurred by appellant in defending the Mrs. Levy suit and demand is made for this under the provision of the indemnity bond stipulating that the indemnitors shall hold the indemnitees harmless ''from and against any and all loss, damages, costs, counsel's fee, charges and

expenses of whatever nature or kind which the company shall or may at any time incur, sustain or be put to for or by reason or in consequence of the company's having given and executed the said bond, . . . also for all costs, counsel's fees, and expenses which it may incur . . . in or about the prosecuting and defending of any action, suit, or other proceedings'' upon the said bond. There is very little conflict in the testimony. Quoting again from the counsel's brief:

''It is not disputed that the case was appealed to the supreme court by the appellant company, appellees' witness, Mr. Hirsch, testifying that it was with the consent of the appellee Henry; and the appellee Judge Henry testifying that he advised and insisted on the appeal and that no question of not appealing the case was ever discussed. It is not disputed that after the case had been appealed appellant's attorneys, Smith, Hirsch & Landau, together with Mr. Fox, the attorney appearing for Henry & Foster in the Levy cause, prepared a brief for the supreme court for the appellant in the Levi case; in other words, that it was a joint brief of Smith, Hirsch & Landau and Henry, Fox & Canizaro.''

Mr. Hirsch in his testimony frankly admits that the appeal was prosecuted by mutual consent of all parties; that when he consulted Mr. Henry about making the settlement that Henry protested and that he afterwards settled the case without the further knowledge of Mr. Henry and against his advice, and without the knowledge or consent of Mr. Foster. He was asked:

''You didn't consider Mr. Henry's or Mr. Foster's rights at all in determining whether to abandon that appeal? A. I considered the rights of my client. . . . Q. You just considered your client's interest and let these other people go? A. Of course, I considered my client's interest paramount.''

Mr. Hirsch further states he became convinced that there was no merit in the appeal, and believed the case

would be affirmed. Also that he considered appellees not entitled to any reduction by virtue of the compromise but that they would be "liable for two thousand, five hundred dollars or nothing." Mr. Fox, on the contrary, testified that he felt outraged at the decision of the lower court, that he had great confidence in the appeal and thought that the case would be reversed. He further states that he had no intimation that the case was being compromised until after the judgment of affirmance had been rendered. Appellees were never called upon to give any further security, or to advance any of the additional expense incident to the appeal.

The general rule of law, sustaining which the authorities are in accord, is that where the indemnitee is sued, the judgment rendered against him is conclusive upon the indemnitor, provided always, that notice be given to the latter and fair opportunity is given to defend the original action; but when the indemnitor, being thus liable over, is given due notice of the pendency of the suit against his indemnitee and requested to defend the action, he is then regarded, not as a stranger to the litigation, but the really interested defendant, and should be accorded all reasonable opportunity and the full right to submit any legitimate defense, to controvert by proper pleadings the claim sued on, to reserve exception to any alleged erroneous ruling of the trial court, and to prosecute an appeal from any adverse judgment.

"In order to bind an indemnitor to a judgment rendered against the indemnitee the covenantor must be tendered a full and fair opportunity to meet the controversy, . . . he should be allowed all the means of defense open to him had he been made a party." Freeman on Judgments, section 181.

Appellees in this case were duly notified or vouched to defend the suit of Mrs. Levy, and the judgment of the circuit court would be binding upon them had no appeal been prosecuted. By common consent appellant super-

seded the judgment of Mrs. Levy and removed the case to the supreme court. In prosecuting this appeal and in presenting the case to the appellate court, appellant had the full co-operation of appellees. The private counsel of appellees assisted in the preparation of the brief in the supreme court; in fact, the brief was a joint brief of the two firms of attorneys. In the prosecuting of this appeal appellees, to the extent of their indemnity, were the real parties in interest. The cause had been submitted in the supreme court on the merits of the appeal and everything was ready for the court to announce its opinion, when appellant, without the knowledge or consent of appellees, entered into a binding written agreement with the attorneys for Mrs. Levy that the case might be affirmed without an opinion and liability thereby fixed against appellant for the full amount of the judgment of the lower court with interest, damages, and costs. It is a fact undisputed and manifest that the action of appellant in agreeing to an affirmance of the case deprived appellees of any benefit of the appeal and rendered valueless and of no account the time, energy, and expense incurred by them in seeing that the appeal was satisfactorily presented to the supreme court.

It is contended by counsel for appellant that the judgment rendered fixes liability against appellant and also defines liability to that extent and concludes appellees. It occurs to us that the judgment of the circuit court was superseded by the appeal, and that the agreement that the case should be affirmed without an opinion and compromised for approximately one thousand, one hundred dollars less than the full demand, simply, at best, under the circumstances of this case, placed appellant in the attitude of paying to Mrs. Levy by agreement the sum of three thousand, one hundred and twenty-five dollars. The result, however, is more far-reaching than this. The judgment being in reality a mere compromise no longer operated as a definitive judgment. The court of last re-

sort had not yet passed upon the merits of the litigation.
The fact that the Mrs. Levy suit was settled for an
amount very much less than the full amount sued for is
a sufficient answer to the proposition that the judgment
of the lower court should be considered of binding force
and effect. Appellant simply placed itself in the attitude
of paying an agreed settlement of a controverted claim,
and the record shows that the inducement for this settle-
ment was a discount offered.   In making this settlement,
therefore, appellant not only concluded itself on the
merits of the questions at issue, but absolutely cut off
the right of appellees to secure from the appellate court
a ruling on the points at issue and a judgment revers-
ing the case.   We are constrained to hold, therefore,
that this settlement of the case without knowledge or con-
sent of appellees operates to release appellees of any lia-
bility upon the claim of Mrs. Levy, and estops appellant
from any recovery upon the agreed judgment or the Mrs.
Levy claim.   It was held in the case of *Ladd* v. *Kuhn,* 154
Ind. 313, 56 N. E. 671, that an indemnitor brought in by
notice to defend an action on which his liability depended,
had such substantial rights as entitled him to prosecute
an appeal taken from an alleged erroneous judgment
and as prevented the nominal defendant from dismissing
the appeal without his consent.   The right of an in-
demnitor to a writ of error is dealt with, and the recip-
rocal obligation upon the indemnitee to co-operate in
prosecuting such appeal is clearly announced by the cir-
cuit court of appeals for the third circuit in the case of
*Robb* v. *Security Trust Co.,* 121 Fed. 460, 57 C. C. A. 576,
as follows:

"That is, the indemnitor is entitled, under such circum-
stances, to all the rights of defense to such a suit, includ-
ing the right of review, which belonged to the indemnitee
as the real party thereto.   Under the law of New Jersey,
the right to a writ of error is absolute.   It was as much
the right of the plaintiff in error as indemnitor, under

the circumstances disclosed by this record, to have taken the case to a reviewing court, as it was to defend the suit against the Security Company in the lower court, provided he exercised that right in good faith and with reasonable promptness, and it was as much the duty of the Security Company, as indemnitee, to refrain from obstructing or interfering with that right, as it was to offer every opportunity for the proper defense of the suit in the court below. The reciprocal rights and duties arise from the law of this particular contract.''

A case very similar, indeed, to the case at bar, and relied on by counsel for appellees, is that of the *American Surety Co.* v. *Ballman,* 115 Fed. 292, 53 C. C. A. 152. The opinion is by the circuit court of appeals for the eighth circuit and we desire to adopt as expressing our views that part of the language of the opinion as fallows:

''An adverse judgment was rendered by the trial court, which was deemed erroneous, and thereupon, in accordance with the understanding between the parties, a writ of error was sued out in good faith, and a transcript of the record filed in the appellate court, and briefs of defendants' counsel, so that the cause was ready to be argued and submitted on its merits, when the plaintiff, without the knowledge or consent of the defendants, dismissed the writ of error, and paid to the Burlington Elevator Company the full amount of the judgment against it. Even though the plaintiff had not formally dismissed the writ of error, its payment of the judgment appealed from necessarily worked that result, and terminated the defendants' right to prosecute a writ of error to final judgment in the court of appeals. In view of the agreement of the parties, this action on the part of the plaintiff clearly estops it from now asserting any claim against the defendants based on the judgment of the Burlington Elevator Company against it. Under the facts found by the circuit court, the payment of that judgment

by the plaintiff was a waiver of any claim against the defendants based on it.

"A further contention of the plaintiff in error is that, if the facts raise an estoppel, it extends no further than to merely destroy the conclusiveness as against the defendants of the judgment obtained by the Burlington Elevator Company against the plaintiff. Since the plaintiff by its notice compelled the defendants to either defend the former action, or to be bound by the judgment, and they did defend it in good faith and at great expense, until their right to do so was cut off by the wrongful act of the plaintiff, the plaintiff cannot compel them to incur the same expense to make the same defense which it called upon them to make in the former action. That would have the effect of permitting it to litigate again the question of its liability on the primary bond in this suit. It cannot play fast and loose with sureties in that way. By compelling them to defend the former action, and then depriving them of the benefit of a full defense, it deprived itself of the right to pursue these sureties, and discharged them from liability. *Stark* v. *Fuller*, 42 Pa. 320."

It cannot well be said that the right of appellees to complain of the weakness of Mrs. Levy's demand still exists. If they can be called upon to litigate in this case, the points at issue in the Mrs. Levy suit, then we would be confronted in this record with a retrial of the entire Mrs. Levy case; but the case of Mrs. Levy has gone into the judicial history of the state without an opinion and is a closed chapter. The door of inquiry into the merits of that litigation has been voluntarily closed by appellant. It would be contrary to every sense of justice to hold that appellees are bound by a judgment rendered without opportunity accorded them to defend themselves, especially when the very appeal prosecuted in the Mrs. Levy case was taken and prosecuted at the expense of appellees. To use a common expression, the latter were

paying the freight, and demand is made in the instant suit for the very expenses incurred by appellant in the prosecution of that appeal. Let us suppose that the record of the appeal in the Mrs. Levy case was punctured with many reversible errors, and that the judgment of the lower court should have been reversed and the case dismissed. If such were the case, then the substantial rights of appellees became manifest. Even though appellant was not fully indemnified against the demand of Mrs. Levy by the bond here sued on, it yet remains that appellant could not save for itself the one thousand, one hundred dollar discount by settlement of the Mrs. Levy suit and at the same time fix full liability upon appellees for the amount of the indemnity bond. The result of such action would be to allow appellant to save itself at the misfortune and at the expense of appellees. A different case, however, might be presented if appellant had in good faith approved the settlement, given due notice thereof to appellees, and then demanded that appellees either enter into the agreement with them or give additional indemnity. It is not necessary for us to decide what the rights of the parties would be under such state of facts. We are not to be understood as holding that appellant was itself compelled to appeal the Mrs. Levy case against the advice of its own counsel or even at its own expense. The record here does not reflect such case. The record in the instant case shows that both firms of attorneys advised an appeal, and that the appeal was in fact prosecuted by consent and without any demand whatever being made upon appellees to sign the appeal bond, to advance any of the expense, or to give any additional indemnity. The prosecution of the appeal was a joint and harmonious venture.

There is no testimony to show liability in this case except for the mere fact of the rendition of the judgment in favor of Mrs. Levy, and testimony as to certain expenses of litigation in that case, and a solicitor's fee paid

private counsel for appellant.  This cause was heard by the trial judge without jury, and his decision on the facts as well as the law seems to have been adverse to the plaintiff.  Under the particular contract of indemnity here sued on appellees are, in our judgment, liable for the reasonable and legitimate expense incurred by appellant in defending the Mrs. Levy suit both in the circuit and the supreme courts.  If the appeal in that case had been successful and the claim of Mrs. Levy dismissed absolutely out of court, still appellees would under the terms of their contract, be liable for expenses reasonably incurred in securing the attendance of Mr. Jaffray, in paying counsel for appellant, in filing the brief in the supreme court, or any other legitimate expense of that character.  It would not, however, be liable for the costs of court properly taxed by the clerks in the Mrs. Levy case.  We cannot say but that the court costs should have been adjudged against Mrs. Levy.  As stated before, we are not in position to inquire into the merits of that litigation.  It was error, therefore, in refusing to give appellant judgment for such legitimate expenses and counsel fees as the court, sitting as a jury, thought proper under the evidence.  As to these items appellant is not estopped; and in order that appellant may be given a new trial as to these items alone, the judgment of the lower court is reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion.

*Reversed and remanded.*