### SECURITY TRUST CO. v. ROBB.

(Circuit Court, D. New Jersey. April 30, 1902.)

1. INDEMNITY—DISCHARGE OF INDEMNITOR—PREVENTING PROSECUTION OF APPEAL.

> A surety, who has been notified to appear and defend a suit, is entitled to appeal to a higher court in case of an adverse judgment; and, if the principal does anything to impair the right, it operates as a release. But on the mere neglect or refusal of the principal to appeal, or where, in order to make it a supersedeas, a bail bond was required, and as a condition to executing it the principal demanded further indemnity, which the surety declined to give, the surety is not discharged; an appeal being allowed by law without a bond, although it would not operate as a supersedeas. A writ of error having been taken out by the surety in the name of the principal, and the principal having been compelled to subsequently pay the judgment, because no bail was entered, he notified the surety that, as a condition to further prosecuting the writ of error, the judgment must be repaid or security given. *Held*, that the condition was not unreasonable, under the circumstances, and therefore the surety was not released.

Action at Law against Surety on Bond of Indemnity. On motions for direction of verdict.

The plaintiff, at the instance of the defendant, became surety on a replevin bond, and took a counter bond of indemnity in the sum of $15,000. The replevin having gone adversely to the defendant, suit was brought against the plaintiff on the replevin bond in the supreme court of New Jersey by the party to whom it was given, and a judgment recovered therein of $14,621.88, the 22d of January, 1901. The defendant, Robb, had notice of this suit, and appeared and defended it by counsel. A writ of error to the court of errors and appeals was taken out, on which, in order to make it a supersedeas, bail was required to be entered within 10 days; and, no such bail having been entered, an execution was issued against the plaintiff on February 18, 1901, and the judgment paid. Plaintiff thereupon brought the present suit on the indemnifying bond given by the defendant. At the trial it was shown by the defendant that within the time required to make the writ of error a supersedeas the defendant met the representatives of the plaintiff with regard to entering such security; the City Trust Company of Philadelphia, an acceptable party, having agreed to become the bail. At that interview, however, further counter security was demanded by the representatives of the plaintiff of the defendant, either by way of collaterals or otherwise, before they would execute the supersedeas bond. The defendant declined to give this security, and thereupon the parties separated. Later on the execution already referred to was issued, and the judgment paid. On April 6th following plaintiff's counsel addressed a letter to the counsel for the defendant, directing him to discontinue the prosecution of the writ of error unless the defendant was willing to reimburse the plaintiff for the sum which they had been compelled to pay, with interest and costs, or would give proper security to repay them. It was suggested in the letter that, unless the direction to discontinue was complied with, counsel would appear in court and ask to have the writ dismissed. The writ was therefore

---

¶ 1. See American Surety Co. v. Ballman (C. C. A.) 115 Fed. 292.

discontinued, under protest. At the trial, upon these facts, each party requested the court to direct a verdict.

D. J. Pancoast and John F. Harned, for plaintiff.
Robt. H. McCarter, for defendant.

ARCHBALD, District Judge[1] (orally). There are some things that are clear in my mind in regard to this, and I confess that there are some things that are not. I am clear, for instance, that the Security Trust Company was not bound to prosecute the writ of error themselves. On the other hand, I am also clear that Mr. Robb, as surety on the replevin bond, was entitled to have the case reviewed by a writ of error, and that if the Security Trust Company did anything to impair that right it would, under the decisions which have been cited to me, have released Mr. Robb, the surety. The real question, then, is whether, under the facts as shown, that right was impaired. An example of a case where it would be is found in American Surety Co. v. Ballman (C. C.) 104 Fed. 634, where the writ was dismissed after it had been taken out, or in Stark v. Fuller, 42 Pa. 320, where, in an action to enforce a mortgage guarantied by the defendant, the plaintiff having recovered less than the amount guarantied, and a rule for a new trial having been taken at the instance of the surety, the plaintiff agreed that it might be discharged. In the present instance, however, we have something considerably less than that, so far, at least, as the interview over which there is so much controversy is concerned. I do not see how anything occurred at that time which would relieve the surety. It is true that, as a condition to executing the appeal bond, the Security Trust Company, by its officers, demanded that Mr. Robb should put up collateral, and the parties divided upon that, and the bond was not executed. It is also proved that in the preparation of that appeal bond Mr. Robb had followed the suggestion of the Surety Company as to who would be acceptable to go upon that bond, to wit, the City Trust Company, and the execution of the bond by that company, upon the payment of some $144 premium, had been secured. But I do not see that that made a contract a breach of which would amount to a release, or impair the right of the surety to have a further review of the case. Nor was that interview necessarily final, either in the time or in the manner of arranging for the appeal; and, whatever part it played in that transaction, it is also in evidence that, in addition to this appeal bond, there was present, in the hands of the officers of the City Trust Company, who were there, a bond of indemnity, drawn up, apparently, for the Security Trust Company to sign, with Mr. Robb as a surety, which Mr. Robb had signed, and which was required by the City Trust Company before they would go on the appeal bond. The parties, however, as I say, fell apart at that interview, and did not come to any agreement. But, as I have suggested, that was not final. It did not bar the prosecution of the writ of error without bail, nor even the prosecution of a writ of error with such security as would make it a supersedeas, which was the thing desired. As a matter of law, the writ of error could have been taken

---

[1] Specially assigned.

and prosecuted, without the execution of the bail or appeal bond by the plaintiff in error, as counsel now admit, although the idea was not present at the time. But, in order to relieve the surety, we must have something which amounts to a bar or prevention of the prosecution of an appeal. That, it seems to me, is what we have got to find in the case to work such a result, and I do not find anything of that character in the interview on the ninth day after the judgment had been signed.

Is there anything subsequent to that? The letter of Mr. Harned is of great importance, to my mind. It virtually amounted to a direction from the plaintiff, through its counsel, to prosecute the writ of error no further except upon certain conditions. The counsel who represented Mr. Robb, in the face of it, could not well go on; and he had the right to regard it as a direction that he should not, as he did. It was peremptory in its character, unless the conditions suggested were complied with, and it was just as forcible and effective as if the parties had met, and an actual direction had been given to dismiss the case. It was therefore a bar to the prosecution of the writ of error, unless it is relieved by the condition expressed in the letter, and that condition was a reasonable one. If it was unreasonable, the effect of it as a bar impaired the right of the surety to go on, and released him. It is just there that the difficulty, in my mind, comes in. Was it unreasonable, under the circumstances, to exact the condition, as a right to further prosecute the writ, that the judgment which the Security Company had paid should be reimbursed to them, or that they should be secured to that extent? The responsibility of deciding this question, in my judgment, is thrown upon the court. Now, in judging of the reasonableness of the condition, we must take into consideration that 10 days were given to the parties within which to perfect an appeal with a proper appeal bond, which would have operated as a supersedeas; which opportunity, without impairment, was open at the beginning to the surety, but not taken advantage of. And that is true, notwithstanding the interview on the ninth day,— that is, on the 31st of January,—or the misconception with regard to the rights of the parties before the law to appeal without a bond. Therefore the case stands this way: With the opportunity given to the surety, without impairment, to take a writ of error and make it a supersedeas, and that opportunity not having been properly availed of, and the time having elapsed in which to do so, an execution was issued, and the Security Company compelled to pay.

As I said in the opening of my observations, after the recovery of the judgment in the lower court I do not think there was any obligation on the part of the Security Company to put themselves in the position of the moving party. That was upon the surety. All that could be asked of them was to aid in it, or not to do anything that would stand in the way or impair or bar that right, that right being a valuable one. But not being themselves the parties to move, and the surety not having moved in season so as to have obtained a supersedeas along with the writ of error, the Security Company was legally compelled, on execution, to pay the money, and thereupon, as the result of this, exacted either payment or security for the subsequent use of their name. I decide, with some hesitation, I confess, that this

demand, under all the circumstances, was not an unreasonable one. They were out their money, and, while but a few weeks had elapsed, yet time works changes, and sometimes very quickly impairs securities that are good and that would be good except for delay. If we put an extreme case, I think we can see more clearly with regard to it than if we judge of it just on the facts as they stand. For instance, if there should be a delay of a year or two, or to nearly the full limit given by the law in which to prosecute a writ of error, it certainly would not be contended that the surety could stand by all that time,—the principal being out the money which he had advanced, —and still have the right to go on and use his name without reimbursing him to the extent that he had been compelled to pay. If the surety secured a reversal of the judgment on error, a writ of restitution would be awarded, which would restore to him whatever he had advanced. And it will be noted that the demand in the letter is not absolute to pay the money; the alternative is also given of otherwise securing it.

Under the circumstances, the demand, in my judgment, was not unreasonable, and the conditional direction by Mr. Harned, the attorney of the plaintiff, to dismiss the writ of error, or to refrain from further prosecuting it by the surety, did not amount to a release of Mr. Robb, and he is therefore legally liable in this case.

To the Jury: Gentlemen of the jury, under the views expressed by the court there is nothing for you to dispose of except to determine the amount of the verdict. As you have heard me say, the responsibility of the case falls upon the court, and the undisputed evidence being that a verdict was recovered on the replevin bond on which the defendant, Mr. Robb, was surety, in a suit where he had the opportunity to appear and defend, for the sum of $14,621.88, you will render a verdict in favor of the plaintiff for that amount, with interest.

---

THE MARS.

(District Court, E. D. New York. April 19, 1902.)

1. TUG AND TOW—GROUNDING OF TOW—NEGLIGENT NAVIGATION IN FOG.

An ocean tug, which in going a distance of eight miles in a fog, with a barge in tow, deviated three miles from the proper course, and grounded, was in fault for the grounding of the tow, which followed; but the barge was also guilty of contributory fault where, although the fog was so thick that the tug could not be seen, nor her course ascertained except by watching the direction of the hawser, which was some 200 fathoms in length, the lookouts stationed for that purpose were inattentive to their duty, and did not observe the slackening of the hawser nor the signals of the tug to cast anchor until the barge had come up on the line, and the grounding was not avoided.

In Admiralty. Suit against tug to recover damages for grounding of tow.

James J. Macklin, for libelant.

Wing, Putnam & Burlingham, for claimant.