## STEPHENS *v.* PENNSYLVANIA CASUALTY CO.

1. CASUALTY INSURANCE—CONSTRUCTION OF CONTRACT—INDEMNITY AGAINST LIABILITY.

A contract of indemnity insurance against liability for injuries to persons by reason of the operation of a street railway, which provided that the indemnity should not be payable until the loss or damage had been adjusted and settled by the insurance company, and that it should have control of all legal proceedings against the railway company for such injuries, being a contract to indemnify against liability, and not merely to indemnify against damage, the liability of the insurer became fixed when final judgment was rendered against the railway; the payment of the judgment not being essential.

2. SAME—TIME OF LIABILITY.

Where, under such a contract, the case against the railway was appealed to the Supreme Court, the indemnity did not become due and payable until the determination of the case in that court.

3. GARNISHMENT—PAYING MONEY INTO COURT—INTEREST.

Garnishment proceedings will not prevent the running of interest where the garnishee does not avail himself of the privilege of paying the money into court under 3 Comp. Laws, § 10627.

4. CONTRACT OF INDEMNITY—COSTS ON APPEAL.

Under a contract of indemnity giving the indemnitor a right to control the defense in an action against the indemnitee, either of the parties to the contract may appeal, and the one appealing must pay the costs if the judgment is affirmed.

Case made from Wayne; Rohnert, J. Submitted October 21, 1903. (Docket No. 61.) Decided December 22, 1903.

*Assumpsit* by Henry Stephens against the Pennsylvania Casualty Company on a contract of indemnity. There was a judgment for plaintiff on verdict directed by the court, and defendant assigns error. Modified.

This is a case made after judgment.  On April 14, 1900, the defendant and the Detroit, Rochester, Romeo & Lake Orion Railway entered into a contract of indemnity; the only parts which bear upon this controversy being as follows:

" In consideration of the agreements hereinafter and the warranties in the application for this policy contained, which application is made a part of this contract of insurance, and of fourteen hundred dollars premium, the Pennsylvania Casualty Company of Scranton, Pennsylvania (hereinafter called 'the company'), does hereby agree to indemnify Detroit, Rochester, Romeo & Lake Orion Railway of Detroit, county of Wayne, and State of Michigan (hereinafter called 'the assured'), for term of one year, beginning on the fourteenth day of April, 1900, at noon, and ending on the fourteenth day of April, 1901, at noon, standard time, against legal liability of the assured for injury to or death of persons, and all legal liability arising or accruing therefrom for loss of service, funeral expenses, and medical attendance, being the result of casualties occurring by reason of the operation of the street railway named in the said application, to an amount not to exceed twenty-five hundred dollars for injury to or death of any one person, and, subject to the same limit for each person, not to exceed ten thousand dollars for the total liability in any one casualty whereby several may be killed or injured, and not to exceed thirty thousand dollars for total liability during the term of this contract.

"Special Agreements.

\*        \*        \*        \*        \*        \*        \*

" 7. The indemnity hereby provided for shall not be payable until the loss or damage has been adjusted and settled by the company, nor until thirty days after satisfactory particulars of the loss or damage shall have been furnished the company.

\*        \*        \*        \*        \*        \*        \*

" 10. The company shall have control of the defense of any legal proceedings against the assured, in the name and on behalf of the assured, for accidents covered by the provisions of this contract, and, in case legal proceedings shall be instituted against the assured for such accidents, the assured shall, within five days of the service of

any writ upon the assured, deliver to the company, at its home office, any writ, and all papers or copies of the same, pertaining to said suit or action, and all other papers received, possessed, or controlled by the assured, relating to such suit or action, immediately upon receipt of same, and keep the company at all times informed of each successive step and of all steps taken in said suit or action immediately upon the occurrence of the same, and render to the company all necessary information and assistance to properly conduct a defense, or prosecute an appeal, or effect a settlement; and a failure of the assured to fully comply with the provisions of this section shall release the company from all liability by reason of such accident, suit, or action."

On September 21, 1900, a passenger upon the railway was injured, brought suit, and recovered on May 2, 1901, a judgment of $2,592 and costs of suit, taxed at $88.90. The defendant assumed the direct control of the defense in that suit. The railway company was satisfied with the judgment, and did not desire to appeal, but the casualty company insisted upon appealing to the Supreme Court. It was finally agreed to assign only such errors as would, if sustained by the Supreme Court, result in a reversal of the judgment without ordering a new trial. Upon an appeal to this court, taken at the instigation of the defendant, which paid all the expenses of the appeal, the judgment was affirmed February 11, 1902 (*Richard* v. *Railway*, 129 Mich. 458 [89 N. W. 52]), and costs taxed on February 20th at $73.50. On March 17, 1902, the judgment and the costs of both courts, and the accrued interest upon the judgment and costs, totaling $2,892, were paid by the railway company; plaintiff furnishing the money, and taking an assignment of the claim against the defendant. The defendant was soon thereafter notified of such payment, but asked for a certificate of the clerk of the court that the judgment had been paid, and by whom, and also asked for a certified copy of the assignment to Mr. Stephens. These certificates were furnished April 4, 1902.

On March 19, 1902, the defendant was served with a writ of garnishment. Another writ was subsequently issued. Under these garnishee proceedings the defendant disclosed its liability to the amount of $2,500, and on July 7, 1902, an order was made, upon the motion of defendant, permitting it to pay $2,500 into court, under the provisions of the statute. This order was complied with July 7th, and a proper receipt taken from the clerk. There the fund remained until February 9, 1903, when the plaintiff gave a bond and received from the clerk of the court the $2,500, and the garnishment proceedings were discontinued. This suit was brought to recover the costs taxed in the Supreme Court, and interest thereon, and interest on the judgment from the date of its rendition. Under the direction of the court, the jury rendered a verdict for the amount claimed.

*Graves, Hatch & Millis*, for appellant.

*Geer & Williams* and *H. R. Martin*, for appellee.

GRANT, J. (*after stating the facts*). 1. The main question arises upon the construction of the contract of indemnity. Plaintiff contends that the legal liability became adjusted and settled upon the rendition of the judgment in the circuit court. Defendant insists that the liability was not adjusted and settled until the judgment was paid, or, if that be not so, until the final determination in the Supreme Court. The contention of the defendant upon the trial was that its liability was limited to $2,500, and that, having paid that amount into court, its liability ended. This result would follow if its construction of the contract be sound.

We think that, under the terms of this contract, when a final judgment was rendered against the railway company, the liability under defendant's contract became fixed, and it was obligated to pay the amount of the indemnity, although the judgment had not been paid. Under defendant's claim, if the indemnitee were insolvent

and never paid the judgment, the indemnitor would never be compelled to pay. This result would, of course, follow if the contract of indemnity required the indemnitee to be first damnified by payment, as was held in the case of *Weller* v. *Eames*, 15 Minn. 461 (2 Am. Rep. 150), upon which the defendant largely relies. That case is distinguishable from the present and others like it. Weller, the plaintiff, was one of two defendants who were sued for the same cause of action. Weller alone obtained an indemnity bond. It might very well be held that in such case Weller might never be compelled to pay, as plaintiff might enforce his judgment against the other defendant. However that may be, the weight of authority seems to be.that contracts like that in this case are held to constitute an indemnity against liability for damages, and not merely indemnity against damages. In the former case payment is not essential, while in the latter it is. The authorities make a distinction between these two classes of indemnity. This distinction is very clearly stated in *Gilbert* v. *Wiman*, 1 N. Y. 550 (49 Am. Dec. 359), wherein the court say :

" By the former [a contract to indemnify against liability], he [the indemnitee] is to be saved from the thing specified; by the latter [a contract to indemnify against loss or damage], from its consequences. * * * It is the distinction between an affirmative covenant for a specific thing, and one of indemnity against damage by reason of the nonperformance of the thing specified. The object of both may be to save the covenantee from damages, but their legal consequences to the parties are essentially different."

See, also, 16 Am. & Eng. Enc. Law (2d Ed.), 178.

The following authorities hold that, under contracts of like character with the one in this case, a payment of the judgment is not essential to recovery : *Pickett* v. *Casualty Co.*, 60 S. C. 477 (38 S. E. 160, 629); *Fenton* v. *Casualty Co.*, 36 Or. 283 (56 Pac. 1096, 48 L. R. A. 770); *Anoka Lumber Co.* v. *Casualty Co.*, 63 Minn. 286 (65

N. W. 353, 30 L. R. A. 689); *Hoven* v. *Assurance Corp.*, 93 Wis. 201 (67 N. W. 46, 32 L. R. A. 388); *McBeth* v. *McIntyre*, 57 Cal. 49.

Which judgment fixed the time of liability,—the judgment in the circuit court, or the one in the Supreme Court? By the terms of the contract, the defendant's liability was limited to $2,500. It had the right to compromise and settle with the injured party, or, if it concluded that the railway company was not liable for negligence, it had the right to contest the suit. It was also contemplated by the contract that defendant might appeal the case to the Supreme Court. This right of appeal in the defendant was absolute. If the railway company had settled the case, after such appeal had been taken, without the defendant's consent or against its protest, the defendant would have been discharged from liability. *American Surety Co.* v. *Ballman*, 104 Fed. 634; *Security Trust Co.* v. *Robb*, 116 . Fed. 201. This right, therefore, was given by the contract, and the loss or damage was not adjusted and settled until the determination of the case in this court. By that adjudication the defendant's liability was adjusted and settled. Interest, therefore, can be charged only from February 11, 1902.

2. On March 19, 1902, the sheriff served a copy of a writ of garnishment upon certain parties claimed to be the agents of the defendant. At the request of the attorneys for Mr. Stephens, the attorneys for the defendant notified it that Mr. Stephens claimed that he had become the owner of the claim before commencement of the garnishee proceedings, and that the writ had not been served upon any one upon whom service of legal process could lawfully be made, and that Mr. Stephens would give the defendant a bond to its entire satisfaction if it would pay him the amount of its liability. There was no legal obligation on the part of the defendant to accept a bond and pay the money to the plaintiff. This offer, therefore, to furnish a bond, does not affect the rights of the parties. Defendant made no disclosure to the writ of garnishment.

It appeared specially and moved to quash the proceedings because the writ had not been served, in accordance with the statute, upon the insurance commissioner, or upon its duly appointed agent. While this motion was pending, and on May 21, 1902, another suit was commenced against the railway company, the plaintiff, and one Andrews, and a writ of garnishment issued to the defendant, charging it with being indebted to Mr. Stephens. This writ was served on the same day. On May 28, 1902, the garnishment proceedings in the former suit were discontinued. June 10, 1902, the defendant filed its disclosure in the last garnishment suit, admitting its liability of $2,500, and alleging that different parties claimed it. On June 13th following, an order was made impleading the different claimants, and on July 7th an order was made directing the defendant to pay the money into court, which it did on the same day. It is urged that these garnishee proceedings suspended the running of interest.

When these garnishee proceedings were commenced, the defendant's obligation to pay had become fixed, and interest on the $2,500 had commenced to run. It might have paid the judgment before the commencement of the first garnishee suit. Many cases hold that the service of the writ of garnishment suspends the running of interest. In Massachusetts the cases hold that, where the debt bears interest by virtue of a contract creating it, the interest continues to run if the party continues to use the money due (*Adams* v. *Cordis*, 8 Pick. 260); but where it does not bear interest by virtue of a contract, but the law imposes interest for the unlawful detention of the debt, the service of the writ suspends the running of interest (*Prescott* v. *Parker*, 4 Mass. 170; *President, etc., of Oriental Bank* v. *Insurance Co.*, 4 Metc. [Mass.] 1). We think that the statute (3 Comp. Laws, § 10627) controls this question of interest, and provides a speedy and ample remedy to a defendant in garnishment to avoid the running of interest. Under that statute, the defendant in garnishment may at once file his disclosure admitting his

liability to the principal defendant, state that it is claimed by others than the principal defendant, pay the money into court, and thus relieve himself from liability for interest. When a party fails to avail himself of this statute, he should be held to pay the interest.

3. Is the defendant liable for costs in the Supreme Court? Under the indemnity contract, both the indemnitor and the indemnitee had the right of appeal. The indemnitor could not have prevented the indemnitee from such an .appeal. The indemnitee could not refuse to take an appeal at the request of the indemnitor, except at the risk of discharging the indemnitor from liability. If either party desires to appeal, and the other does not, the real party appellant must pay the costs of the appeal. If both parties join in the appeal, each must bear, as between themselves, the proportionate share of the costs of such appeal. It follows that the defendant is liable for the costs of the appeal.

The judgment will be modified in accordance with this opinion. Defendant will recover the costs of this court.

MOORE, CARPENTER, and MONTGOMERY, JJ., concurred. HOOKER, C. J., took no part in the decision.