## SECURITY TRUST CO. v. ROBB et al.

(Circuit Court of Appeals, Third Circuit. January 9, 1906.)

### No. 6.

1. EVIDENCE—SECONDARY EVIDENCE—COPIES OF DOCUMENTS.

The most conclusive proof of the correctness of copies of documents does not abrogate the rule which excludes them as secondary evidence, unless it is shown that the party offering them is unable to produce the originals or to compel their production.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 561.]

2. TRIAL—RECEPTION OF EVIDENCE—ADMISSION OF PLEADING FOR PARTICULAR PURPOSE.

Where a party offered a pleading in a former suit in evidence for a particular purpose which on objection was further limited by the court, to which ruling no exception was taken, the adverse party cannot claim that copies of documents attached to such pleading having no relation to the purpose for which it was offered or admitted were either in evidence or were offered.

3. EVIDENCE—HEARSAY—LETTER WRITTEN BY THIRD PERSON.

The contents of a letter written to a plaintiff by a third person not connected with defendant, which purports to contain a statement made to the writer by defendant, are inadmissible as hearsay.

[Ed. Note.—For cases in point, see vol. 20, Cent Dig. Evidence, § 1194.]

4. TRIAL—RECEPTION OF EVIDENCE—ANSWERS TO PREVIOUS LETTER.

Where a letter offered in evidence was in reply to another, the adverse party has the right to require the two to be offered together.

5. EVIDENCE—PERTINENCY.

Where the good faith of the action of a plaintiff in demanding security from defendant before doing an act which defendant claimed it had obligated itself to do was in issue, evidence that defendant possessed ample means was pertinent.

6. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

The improper admission of evidence is not reversible error, where it cannot reasonably be supposed to have been prejudicial to the adverse party.

Acheson, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of New Jersey.

John G. Johnson, for plaintiff in error.

Robert H. McCarter, for defendants in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This case was here in March, 1903, and the decision then made has been reported in 121 Fed. 460, where, in the syllabus, the reporter has supplied a summary of the material facts, which for the present purpose sufficiently states them. It is substantially as follows:

"Thomas Robb, an indemnitor of the Security Trust Company, surety on a forthcoming replevin bond, was notified to defend an action thereon, which he did. After an adverse judgment, it was agreed that a writ of error should be sued out, and the indemnitor made arrangements with the City Trust, Safe Deposit & Surety Company, a surety company satisfactory to the Security Trust Company, to execute the necessary bond. During the 10 days

within which the bond could be filed and the supersedeas obtained, the Security Trust Company, with knowledge, acquiesced in the arrangements, and, on the last day on which the bond could be executed, a bond properly drawn and executed by the City Trust, Safe Deposit & Surety Company was presented to the Security Trust Company for its signature, according to the uniform practice, when it for the first time refused to execute the bond or continue the litigation. Thomas Robb, the indemnitor, sued out the writ of error in the name of the Security Trust Company, without a supersedeas, to which the Security Trust Company subsequently objected, and, after paying the judgment appealed from, notified the indemnitor that, unless further security was given, it would move to dismiss the appeal, whereupon the writ of error was discontinued by the indemnitor."

The decision above referred to reversed a judgment for the defendant below (116 Fed. 201), which had been entered on a verdict directed by the court. But upon the ensuing new trial (to which the present writ of error relates) the case was submitted to the jury, with instructions which conformed to the views expressed by this court upon the former occasion, and which were not in any respect open to valid exception. Of the specifications which go to the charge we do not deem it necessary that more should be said; but those which aver that errors were committed in the rejection or in the admission of evidence raise questions which were not previously presented, and to them therefore we have now given special and careful consideration.

1. The plaintiff below (and here) offered in evidence, and the court excluded, two writings purporting to be copies, one of a letter dated January 31, 1901, addressed by F. R. Fithian, president of the plaintiff company, to the City Trust, Safe Deposit & Surety Company; and the other of a letter (written in reply to the former) addressed by William G. Wise, assistant trust officer of the last-mentioned company, to Francis R. Fithian, president, etc. With the subject-matter of these letters we need not concern ourselves, for the question to be decided is not whether their contents were relevant, but whether, assuming their relevancy, the proposed manner of proving them was a permissible one. The original letters were not produced. They were not in the possession or power of the adverse party. Presumably, the letter of Fithian to the City Trust Company remained in its custody; but, though its officers were subject to subpœna, and its assistant trust officer and one of its employés were actually examined as witnesses, none of them was required to produce it. The letter from Wise to Fithian, president of the plaintiff company, was not shown nor alleged to have been destroyed or lost, and therefore, in presumption of law, it was still in that company's keeping. As to both letters, then, we think it would be difficult to conceive of a case more clearly within the rule that secondary evidence may not be given without legally sufficient reason. This rule is an important and familiar one. It is a necessary deduction from the law's requirement that the best evidence of which the case in its nature is susceptible shall always be presented. It has for its object the prevention of fraud, and its enforcement is essential to the pure administration of justice. Taylor on Ev. (Amer. Ed. 1887) vol. 1, p. 365, et seq. It has been applied by our courts, both state and federal, in many instances, but it will suffice to refer to its statement in the cases of Tayloe v. Riggs, 1 Pet.

591, 7 L. Ed. 275, and Carland v. Cunningham, 37 Pa. 231. In the former, Chief Justice Marshall, speaking for the Supreme Court of the United States, said:

"The rule of law is that the best evidence must be given of which the nature of the thing is capable; that is, that no evidence shall be received which presupposes greater evidence behind, in the party's possession or power. The withholding of that better evidence raises a presumption that, if produced, it might not operate in his favor. For this reason, a party who is in possession of an original paper, or who has it in his power, is not permitted to give a copy in evidence, or to prove its contents."

In the latter, Mr. Justice Thompson, on behalf of the Supreme Court of Pennsylvania, used this language:

"It is a rule of evidence, too ancient and too well understood to require proof of its existence, that the original instrument is better evidence than a copy, and that the primary source of information is better than the secondary. The latter is only resorted to after the necessity for doing so is shown to exist in an inability to produce the former. If the original instrument be lost or destroyed, this is a sufficient ground for secondary evidence. So if it be shown to be in the hands of the opposite party, who refuses to produce it on notice. But a preliminary step to proof of contents, after proof of existence, is proof of notice to produce it. This is indispensable to the admission of secondary evidence. Inconvenience or absence from the state is not an excuse for omitting this notice."

That in these cases the originals happened to be in the possession of the party himself, whereas the Fithian letter was in the hands of a stranger, is unimportant, for by subpœna duces tecum the production of that letter could have been secured, and the issuance of such a subpœna was as essential a prerequisite to the reception of secondary evidence of its contents, as, in the case of the Wise letter, was proof of its loss or destruction to the introduction of a copy of it. But it is contended that, notwithstanding the apparent conclusiveness of the rule we have discussed, the admissibility of the copies here in question resulted from the existence of two facts which were indisputably established. The first is that the Fithian letter had been read to Henry B. Robb, who testified that he had no doubt that the paper offered was a copy of it; and the other is that in a certain answer in equity there was contained a copy of that letter, and also of the Wise letter.

It may be taken as conceded that Henry B. Robb fully represented Thomas Robb, the defendant; for, if Thomas Robb himself had heard the Fithian letter read, that fact, in our opinion, would not have sufficed to justify the reception of a copy of it, though testified to be a correct one, in substitution for, and in the unexplained absence of, the letter itself. The question whether secondary evidence of any kind may be given is quite distinct from the question whether the particular evidence proposed would be, as secondary evidence, admissible. Even where a copy of a writing is unquestionably competent, it must be made to appear that the copy presented is a correct one; but the most conclusive proof of its correctness will not render a copy available, without ground laid for dispensing with the production of the original. Here the ground relied upon is that the letter had been read to an agent of the defendant; but, as we have said, if it had been read to

the defendant himself, that circumstance would have constituted no adequate foundation to support the allowance of secondary evidence of its contents. Such evidence may be resorted to only after the necessity for doing so has been shown to exist in an inability to produce the primary evidence. The best evidence is always required, and therefore the memory of a witness, however credible, as to the accuracy of a copy, will not justify its substitution for an original which is either in the possession or in the power of the party by whom such substitution is attempted. The Supreme Court of Pennsylvania, in Buchanan v. Moore, 10 Serg. & R. 275, not only assumed the general rule to be that the loss or destruction of a document must be shown before secondary evidence may be given (page 279), but appears to have distinctly decided the point which is now under consideration. That case was before the Supreme Court upon writ of error to a judgment in an action of ejectment, wherein Moore was the plaintiff and Buchanan and others were the defendants. Upon the trial below, "the only matter in dispute was what was the land sold by the sheriff to the plaintiff." In order to sustain his side of that dispute, the plaintiff offered the deposition of George Stroop, in which he testified that Buchanan had told him that the lands were not properly described in the advertisement of sale, and that at some other time he would give him a proper description; and that, accordingly, Buchanan called on him some time afterwards, "with a small paper containing a description of his lands advertised for sale, in which the sawmill tract was described as containing upwards of 300 acres." This part of the deposition had been admitted by the court below, notwithstanding objection upon the ground:

"That the description being in writing, parol evidence of its contents was not admissible, without notice having been given to Buchanan, to produce it."

It will be observed that Buchanan had not merely heard the paper read, but had himself written it or caused it to be written, and yet the Supreme Court said:

"The objection was good. The parol evidence ought not to have been admitted. * * * Until Buchanan refused or neglected to produce the paper alluded to, on notice, the evidence of Stroop was not the best evidence which the nature of the case admitted of. In the admission of this part of the deposition there was error."

We entertain no doubt of the correctness of this ruling. "The law and the practice on the subject is plain and well settled," and we think that the wholesome rule which has been thereby established should not be relaxed or disregarded in any case, but should be uniformly adhered to in all cases. By some courts, indeed, a strict and literal compliance with its terms has been deemed so important that even the presence of the document in court has been supposed not to relieve from the consequence of a failure to give notice to produce it. But this is going further than we need go now, or would be disposed to go at any time. Watkins v. Pintard, 1 N. J. Law, 378; Milliken v Barr, 7 Pa. 23.

The answer in the equity suit of Thomas Robb against the Security Trust Company was offered in evidence on behalf of Thomas Robb,

142 F.—6

the defendant below, "for the purpose of showing, by the admissions therein made, that David Baird, John J. Burleigh, and J. Williard Morgan were at that time directors of the plaintiff company." Counsel for the plaintiff objected, and, on being asked by the court, "What is your objection?" he replied: "That it is incompetent and irrelevant; that he cannot prove the directorship of the gentlemen named, in that manner." The court then said "that the offer should be limited to Mr. Burleigh's relation"; and, "in view of the objection made to the offer, I think I ought to sustain the objection." To this ruling neither party excepted, and it plainly appears, from the record before us, that the effect which was attributed to it by the court, and by the counsel of each party, was that it admitted the document in evidence, but only for the purpose of showing the relation of John J. Burleigh to the plaintiff company, and for no other purpose whatever. Subsequently, during the argument of defendant's counsel to the jury, certain remarks which he then made "with reference to the equity papers" were objected to by counsel for the plaintiff; and, although the learned judge said that he thought that in the remarks complained of a correct statement had been made "of the purpose" for which they were admitted, it was not suggested by any one that they had been admitted for all purposes. Indeed, though the record does not inform us as to what the language objected to was, or as to what was said in making the objection, it is made apparent by the observation of the court that the complaint of counsel for the plaintiff was that his adversary had referred to the papers to an extent not permissible, in view of the restriction which the learned judge had imposed upon their use; and, in the brief submitted by him to this court, it is expressly stated that, in consequence of the rejection of the separate copies of the Fithian and Wise letters, which have been heretofore discussed, no argument to the jury was based upon them. These facts, we think, make it plain, not only that the case was tried, with the acquiescence of both parties, upon the assumption that the copies contained in the answer in equity were not evidential, but also that, on behalf of the plaintiff itself, it was insisted throughout that the answer could not be referred to for any purpose other than the specific one for which the court had received it. Nor did this repudiation of the equity record cease with the termination of the proceedings in the court below. Even in this court, it has been averred that it should not have been admitted at all. It is true that, upon the oral argument, this averment was withdrawn, but the reasonable inference from the fact that it had been made could not be refuted by its withdrawal; and that inference is that the assignment of errors was framed with the still continuing understanding that the court's qualified admission of the answer in equity had not put in evidence the copies it exhibited. Whether the plaintiff might not have demanded that it should be admitted for all purposes, or not at all, is a question which is not, and could not have been, raised by any specification of error. In the course of the discussion in the court below, the plaintiff's counsel did advert to this point, but he did not press it; and, as has been shown, the trial proceeded to its close, in conformity with

the decision which was actually rendered, and to which no objection was made or any exception taken. Waldron v. Waldron, 156 U. S. 361, 379–382, 15 Sup. Ct. 383, 39 L. Ed. 453.

If, however, it were true that the copies of the letters which were contained in the record produced by the defendant were already in evidence, it would be somewhat difficult, we think, to discern any harm that could have been done to the plaintiff by refusing to allow it to duplicate them; but, waiving this difficulty, we prefer to put our decision of this branch of the case upon the ground that the proposition upon which the plaintiff in error apparently relies is unsound and illusory. The substance of its contention seems to be that the defendant's offer, and the court's admission, of a document which included copies of the letters in question, entitled the plaintiff, though the letters themselves were in its power, to put in evidence other copies of them; and this, notwithstanding the fact that the document was offered for a purpose with which the letters had nothing to do, and was, without objection, admitted only for a still more limited purpose. We have been referred to no authority which maintains this contention, nor has any principle that supports it been suggested. The hypothesis upon which it is predicated is that the defendant had himself introduced copies, and the consequence deduced from that hypothesis is that he was precluded from requiring the plaintiff to adduce the originals. But the obvious and fatal defect of this theory is that it rests upon an unwarranted assumption of fact. There was no copy of either letter in the case, and nobody supposed there was. The plaintiff's counsel must have so understood the situation when he offered the separate copies; and there can be no doubt whatever that the learned judge so understood it when he rejected them.

There were other objections to the copy of the Wise letter, of which but little need be said. In the first place, it purported to be a copy of a letter addressed to the president of the plaintiff company by an officer of a similar company. The defendant was not connected with it. Its contents, including the statement that the writer had received from Henry B. Robb a communication which was quoted in it, were inadmissible under the rule which excludes as hearsay any statement contained in a writing, proof of which is not admissible upon other grounds. Furthermore, as the Wise letter was written in reply to the Fithian letter, defendant was entitled to insist, as he did, that in the absence of legal proof of the latter the former could not be introduced. We do not hold that an entire correspondence must, in every case, be presented, but only that, where two letters are immediately connected, as in this one, they should, if required, be connectedly offered. "In Watson v. Moore, 1 Car. & K. 626, Chief Baron Pollock held that it was the duty of a party, putting in evidence a letter which purported to be an answer to another letter, to call for and put in at the same time the letter to which it purported to be an answer, and not to leave it to be put in by the other party." Trischet v. Insurance Co., 14 Gray (Mass.) 458.

2. The only remaining specifications which need be noticed go to the admission of evidence: First, that the defendant was possessed of property of considerable value; and, second, that it was the cus-

tom of all trust companies, when becoming surety, to require a bond of indemnity. It is undoubtedly true that, in general, neither the wealth nor the poverty of a party litigant is for consideration when his duties or rights are under judicial investigation. But in this case the financial responsibility of the defendant was relevant for a special reason. The plaintiff had called upon him for a deposit of collateral, as a condition precedent to the performance by it of an act which the defendant claimed it was bound unconditionally to perform; and he asserted that its demand for collateral was not made in good faith, for the purpose of securing any claim it might thereafter have against the defendant, but was really intended to obstruct the transaction to which the doing of the act referred to was supposed to be essential. To this question of motive the fact that Thomas B. Robb was a man of ample means could not, we think, be said to be wholly without pertinency, though its weight, of course, was for the jury. But if this were otherwise, it could not be reasonably supposed that the plaintiff was at all prejudiced by the evidence in question. It was not referred to in the charge of the court, and it may be confidently assumed that the jurors were not unduly influenced in favor of the defendant by proof of the fact that he was a man of wealth. Therefore, even if that proof were improperly admitted, no substantial wrong or miscarriage was occasioned, and consequently no reversible error was committed. Hornbuckle v. Stafford, 111 U. S. 389, 4 Sup. Ct. 515, 28 L. Ed. 468; Gilbert v. Moline Plow Company, 119 U. S. 491, 7 Sup. Ct. 305, 30 L. Ed. 476.

William G. Wise, an officer of the City Trust Company, was called on behalf of the defendant. He testified that he had not informed the plaintiff company that it would be required to sign a certain bond of indemnity. This testimony was given in response to a question which was put and insisted upon by plaintiff's counsel, notwithstanding objection by the counsel of defendant; and hence it may be assumed that the fact that it had not been expressly made known to the plaintiff that it would be required to execute the indemnity bond referred to was regarded by its counsel as a material one. But surely it was open to the defendant to rebut the suggested inference therefrom that the plaintiff was wholly ignorant that such requirement would be made, by evidence tending to show that it must have been aware that it would be; and therefore the custom of trust companies to impose that requirement could not but be relevant as against the plaintiff. It, as well as the City Trust Company, was undoubtedly conversant with the usages of such companies, and it is to be presumed that in their dealings with each other they had them in mind. Robinson v. United States, 80 U. S. 365, 20 L. Ed. 653. But it is unnecessary to dwell upon this point, for the only object for which the plaintiff introduced the matter of the indemnity bond was to justify its conduct with respect to the writ of error; and yet it was afterwards conclusively shown that its behavior in that regard was not at all influenced by the fact that it had been called upon to sign such a bond. Charles W. Glazier, a witness for the plaintiff, testified as follows:

"Q. Now is or is it not true that Mr. Fithian made absolutely no point of, or objection to, the indemnity bond, but confined his whole objection to signing to the fact that Mr. Robb refused to put up $15,000 additional collateral? While Mr. Robb was there I am talking about now. Witness: I didn't quite catch the question. (Question read by the stenographer.) Mr. McCarter: Do you understand it? A. Oh, yes. That was the final culmination of the interview. Q. Is it not the fact the signing of the indemnity was only raised by Judge Armstrong after Mr. Robb left? (Objected to as not cross-examination.) Q. I will modify my question. I will ask you if it is not true that, while Mr. Robb was present, no point whatever was made in regard to the second bond that has been referred to, and that the sole objection raised by Mr. Fithian was because Mr. Robb, at his request, declined to put up $15,000 additional collateral? A. That is absolutely correct, sir."

By this testimony, all the preceding evidence concerning the bond of indemnity was rendered immaterial; and that counsel, as well as the court, deemed it to be so, is indicated by the fact that no exception was taken upon the ground that the learned judge did not submit it to the jury for consideration, but, on the contrary, so stated the cause of action and the defenses as practically to eliminate it from the case. We quote the first two paragraphs of the charge:

"Gentlemen of the jury: As you are aware, this is a suit brought upon a bond dated June 15, 1897, and given by Thomas Robb to the Security Trust Company; and the plaintiff, the Security Trust Company, claims that there is due to it on that bond the sum of $14,842.04, with interest from February 21, 1901, to date, amounting to $18,201.28.

"As I understand the case and the position assumed by the counsel for the defendant, there are two defenses. The first is that Thomas Robb, who gave the bond, and who, since the commencement of this suit, has died, was released from liability on that bond because the plaintiff, the trust company, induced him to believe during the trial upon another bond of which I shall speak later, that it (the trust company) would execute an appeal bond in that other case, until it was too late for Thomas Robb to make any other arrangements for an appeal bond and to secure a stay of execution in that suit; and, second, because the plaintiff, the trust company, refused to permit Thomas Robb to prosecute a writ of error in the name of the trust company unless Thomas Robb deposited collaterals with it to the extent of $15,000."

Thorough investigation of the entire record has satisfied us that no error was committed by the Circuit Court, and therefore its judgment is affirmed.

ACHESON, Circuit Judge, dissents.