## In re WILLFUEHR et al.

(District Court, S. D. New York.   June 8, 1923.)

1. **Evidence ⬤═179(2)—Claimant held entitled to introduce secondary evidence of contract.**

   Where letters written by bankrupts to claimant and alleged to constitute part of a contract of sale between them were obtained from claimant by a member of the bankrupt firm ostensibly for examination, but were never returned, and after diligent effort neither the letters nor such member could be found, nor his testimony obtained, claimant was entitled to introduce secondary evidence of their contents.

2. **Evidence ⬤═179(2)—Party wrongfully deprived of possession of written instruments may introduce secondary evidence of contents.**

   A party who is deprived of possession of written instruments belonging to him by fraudulent representations or devices of another person is entitled to give secondary evidence of their contents, on showing that he has exercised reasonable diligence for their recovery.

In Bankruptcy.   In the matter of Herman F. Willfuehr and others, individually and as copartners doing business as the American Fuel & Shipping Company.   On review of order of referee disallowing claim of Frank T. Neely.   Order set aside, and matter recommitted.

Louis H. Rowe, of New York City (S. H. Molleson, of New York City, of counsel), for trustee.

Arthur Carter Hume, of New York City, for claimant.

WINSLOW, District Judge.   This is an application by Frank T. Neely for a review of the order of the referee in bankruptcy denying the petitioner's claim.   The petitioner's claim is based upon an alleged contract entered into between the bankrupt firm and the claimant, on or about November, 1920, wherein it is contended that the bankrupts offered to purchase from the claimant and the claimant agreed to deliver 36,000 tons of coal.   The details of the contract, as to prices and conditions, are said to be contained in two letters written by the bankrupts to claimant, offering to purchase the coal, and the written acceptances of the claimant, contained in letters from him to the bankrupts.

[1] It appears from the summary of the evidence certified to this court that one of the bankrupts, Codina, after a preliminary conversation with Neely, the claimant, dictated two letters on November 4, 1920, and, after the same had been typewritten, directed one Antone, an associate of Codina and an employee of the firm, to sign and deliver to Mr. Neely the letters in question.   The letters of the claimant followed.   These facts seem to be undisputed.   Thereafter, at the office of the bankrupts, these letters of the bankrupts, on the request of Codina, were handed to him by Neely, ostensibly for examination.   Codina left the room, taking the papers with him, and disappeared.   Neely, after waiting for some time for his return, demanded that duplicates of these letters be furnished to him, which was promised; but the duplicates were not furnished and the originals have never been restored to the claimant.   The witness Antone testified before the ref-

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

eree, in substance, that, in a subsequent conversation with Codina, Codina said he had "lost" the papers. The witness Herman Willfuehr testified that Codina told him: "I took care of the papers, and Neely won't bother us any more."

At the hearings before the referee, the circumstances of the dictation, writing, and signing of the letters in question were testified to in detail. The referee, on objection by the attorneys for the trustee, refused to permit secondary evidence to be introduced showing the contents of the missing letters, and on motion by the attorney for the trustee struck from the record letters answering the bankrupts' letters written by the claimant, accepting the offer to purchase the coal and confirming the alleged contract. These letters of acceptance had been previously admitted, apparently on the theory that the letters of the bankrupts of November 4, 1920, to which these letters were responsive, would be produced. The claimant, however, was unable to produce the missing letters for the reasons stated above.

The exclusion of secondary evidence as to the contents of missing letters, contended to be a part of the contract, makes it impossible for the court to pass upon the competency or relevancy of such letters, or the probative value, if any, of the same. The immediate question, therefore, before this court on the record, is whether the referee was justified in excluding secondary evidence as to the contents of the missing documents. I am of the opinion that the claimant offered abundant evidence that the letters were either lost or destroyed, and that the referee should have received the proffered testimony regarding their contents. If lost or destroyed, it was the result of the deliberate act or negligence of Codina, one of the bankrupts.

The claimant has employed detectives and process servers, including government agents, to procure the presence of Codina, or to ascertain his whereabouts. Subpœnas have been issued, directed to him, but have not been served. The claimant spent two days in Philadelphia trying to locate Codina, and, when he finally did locate him, Codina stated that he would not obey any subpœnas and that he had already disregarded a previous subpœna in the bankruptcy proceedings. He referred claimant to an attorney in New York. This New York attorney, however, disclaimed to the claimant any authority to represent Codina, and said that he did not know where Codina was.

[2] A great number of persons have been interviewed in behalf of claimant for the purpose of ascertaining Codina's whereabouts. In short, it appears that a most exhaustive search and effort has been made by the claimant to procure the presence of Codina or the production of the documents, if, indeed, they are still in existence. A party who is deprived of the possession of written instruments belonging to him by fraudulent representations or devices of another person, so that they cannot be produced, is entitled to give secondary evidence of their contents, as in the case of lost instruments. 22 Corpus Juris, p. 1035; 22 Corpus Juris, p. 1033, § 1322.

"Where the writing constituting or containing the best evidence of a fact has been voluntarily destroyed by the party against whom the fact is sought to be proved, secondary evidence is admissible; and in this respect

any act of such party whereby the writing is effectually placed beyond the power and control both of the other party and the court are equivalent to destruction."

While there may be no general rule as to the degree of diligence in making search for lost documents, the party desiring to introduce secondary evidence must show that he has in good faith exhausted in a reasonable degree all the sources of information and means of discovery that the nature of the case would naturally suggest and which are accessible to him. Security Trust Co. v. Robb, 142 Fed. 78, 73 C. C. A. 302; Trombley v. Seligman, 191 N. Y. 400, 84 N. E. 280. In my opinion, the claimant has exercised due diligence and has exhausted all sources of information and means of discovery in a reasonable degree, which in the nature of this case might be suggested. I am of the opinion that the learned referee erred in excluding such secondary evidence. Manifestly the court cannot pass upon the probative value or the relevancy of such evidence until after the same has been received, nor can it now undertake to pass upon the validity of the claim.

The order under review should be set aside, and an order will be made directing the referee to reconsider the claim and accept the evidence offered by the claimant.